No. 24-6153

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Diego Pavia

*Plaintiff/Appellee*

v.

National Collegiate Athletic Association

*Defendant/Appellant*

On Appeal from United States District Court for the
Middle District of Tennessee
Nashville Division

## DIEGO PAVIA'S APPELLEE APPENDIX

Ryan Downton
The Texas Trial Group
193 Dorado Beach East
Dorado, PR 00646
Telephone: (512) 680-7947
Email: Ryan@TheTexasTrialGroup.com

Salvador M. Hernandez
Riley & Jacobson, PLC
1906 West End Ave.
Nashville, TN 37205
P: (615) 320-3700
F: (615) 320-3737
shernandez@rjfirm.com

*Counsel for Plaintiff/Appellant Diego Pavia*

# <u>TABLE OF CONTENTS</u>

**Page**

Table of Contents ........................................................................................2

Certificate of Compliance ...........................................................................3

Certificate of Service ..................................................................................4

Exhibit 1 - Copy of Diego Pavia PowerPoint Presentation admitted into
    evidence at the Preliminary Injunction Hearing as indicated by RE. 37
    Exhibit List, Page ID #1107 ............................................................5

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify:

1.     The Appendix documents are properly part of the district court record

as evidenced by RE 37 – Exhibit List, Page ID# 1107.

Dated: April 22, 2025

<u>s/Salvador M. Hernandez</u>
Salvador M. Hernandez

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system on April 22, 2025. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *Salvador M. Hernandez*
Salvador M. Hernandez

1

*Diego Pavia v. NCAA*
Case No. 3:24-cv-01336
United States District Court for the Middle District of Tennessee

# Diego Pavia Presentation
# Hearing on Preliminary Injunction
# December 4, 2024

Ryan Downton
The Texas Trial Group
Ryan@TheTexasTrialGroup.com

Salvador Hernandez
Riley & Jacobson, PLC
shernandez@rjfirm.com

# Legal Standard

1. Clearly Demonstrates Likelihood of Success on the Merits;

2. Irreparable Harm;

3. No Substantial Harm to Others; and

4. Injunction Advances the Public Interest

*Jones v. Caruso*, 569 F.3d 258, 270 (6th Cir. 2009).

# Likelihood of Success on the Merits: Sherman Act

## Sherman Act

"Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1.

## Eligibility Rules Affect Commerce

- Any argument that NCAA "eligibility rules [] do not regulate any commercial activity" is simply "not credible." *O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 802 F.3d 1049, 1064-65 (9th Cir. 2015).

- "And the Sixth Circuit in Bassett held that the NCAA's recruiting rules prohibiting improper inducements 'are all explicitly non-commercial.' But Bassett predated the NIL era of college athletics.... Thus, Bassett is distinguishable because it was decided in a different context when NIL did not exist." *Tennessee v. NCAA*, 718 F.Supp.3d 756 (E.D. Tenn. 2024)

- **Players**: Deciding who is eligible to play and who is not impacts players' ability to earn NIL money

- **Schools**: "There is doubtless a financial advantage [to NCAA member schools] in moving older players out and replacing them with younger players" because "an outgoing star would be considerably more costly to the school than an incoming player." Maxcy Decl. at ¶47.

# Likelihood of Success on the Merits: Sherman Act

## Three-Step, Burden Shifting Framework

1. Plaintiff Must Show "Substantial Anticompetitive Effect" in Relevant Market

2. Defendant Must Show "Procompetitive Rationale"

3. Plaintiff Must Show "Less Anticompetitive Means" That Could "Reasonably Achieve" Procompetitive Efficiencies

*NCAA v. Alston*, 594 U.S. 69 (2021)

# Likelihood of Success: The Market

### Horizontal Price Fixing

"Here, these [NCAA] bylaws are essentially horizontal agreements among competitors that compete in the same sport-specific markets within NCAA Division I theatrics."
*State of Ohio v. NCAA*, 706 F.Supp.3d 583, 591 (N.D. W.Va., Dec. 13, 2023).

"Given that horizontal restraints involve agreements between competitors not to compete in some way, this Court concluded that it did not need to precisely define the relevant market."
*Ohio v. American Express Co.*, 138 S.Ct. 2274, 22845, n.7 (2018)

### The Markets

1. Labor Market for College Football Players
   (Demand Market)

2. Market of Football Games Available on Television
   (Supply Market)

# Likelihood of Success: Substantial Anticompetitive Effect

"Substantial Anticompetitive Effect" can be shown by:

- Direct Evidence of "Actual Detrimental Effects"; **or**

- Indirect Evidence of:

  (1) Market Power; and

  (2) "some evidence" of harm to competition.

*Ohio v. American Express Co.*, 138 S.Ct. 2274, 2284 (2018)

# Likelihood of Success: Market Power

## Market Power

- ## Monopsony
  One Buyer Controls Demand (How Many Football Players to Hire)

- ## Monopoly
  One Buyer Controls Supply (How Many Football Games on Television)

"NCAA acknowledges that it controls the market for college athletes."
*Alston*, 594 U.S. at 109 (Kavanaugh, J., concurring).

# Likelihood of Success: "Some Evidence" of Competitive Harm

Anticompetitive Effect 1 (on Demand market): Reduces *Quantity* of Input

- JUCO Players Represent 10% of New Entrants to Labor Market



https://www.ncaa.org/sports/2017/8/3/transfers-in-division-i.aspx

Removing Them From the Labor Market One to Two Years Early Restricts Supply and Depresses Labor Costs

# Likelihood of Success: "Some Evidence" of Competitive Harm

Anticompetitive Effect 1 (on Demand market): Reduces *Quantity of Input*

Example:

- Pavia likely to earn over $1 million next year in NIL.
- Player replacing him likely to earn less.
- Vanderbilt's cost for labor decreases.

Compare:

- NFL Draft (pre-collectively bargaining).
- Struck down as a "total ban on competition" because players could only sign with one team or not play at all.  NFL teams were barred from competing for player services. *Smith v. Pro Football Inc.*, 593 F.2d 1173 (D.C. Cir. 1978).
- Same result here – NCAA teams are barred from competing for Pavia's services.

"The sole difference between this case and *Alston* is that *Alston* involved compensation provided to athletes while Plaintiff here challenges an even more direct restraint on trade: the NCAA's transfer rules which prohibit a student from playing…." *State of Ohio*, 706 F.Supp.3d at 591.

9

# Likelihood of Success: "Some Evidence" of Competitive Harm

Anticompetitive Effect 2 (on Demand Market):
Encourages Inefficient Choices By Labor

NCAA gains material advantage over
Junior Colleges in recruiting high school players.

- NCAA and junior colleges should be competitors for athletes at the margins: either athletically or academically.

- But if an athlete goes to JUCO, he loses NCAA eligibility.

- Accordingly, athlete is pushed to join NCAA monopoly right out of high school.

- Even though it may be in the individual athlete's best interest to attend JUCO first

- NCAA is encouraging athletes (labor) to make inefficient choices

Maxcy Decl. at ¶27.

10

14

# Likelihood of Success: "Some Evidence" of Competitive Harm

Anticompetitive Effect 3 (on Supply Market):

*Reduces Quality of Output*

- NCAA Pushes Out More Experienced and Better Known Players

- Quality of Football Product on TV Decreases

- NCAA Labor Costs Decrease By Ensuring Constant Churn of Players

The purpose of antitrust analysis "is to form a judgment about the competitive significance of the restraint; it is not to decide whether a policy favoring competition is in the public interest, or in the interest of the members of an industry."

*National Society of Professional Engineers v. United States*, 435 U.S. 679, 98 S.Ct. 1355, 1364 (1978).

11

# Likelihood of Success: Procompetitive Rationale

<u>NCAA Response 1: Preserve intercollegiate athletics as a unique offering.</u>

Why are JUCOs treated differently than:
- Prep School Athletes
- CHL Hockey Players
- Professional Athletes in Other Sports (e.g. Chris Weinke)
- Religious Missions (e.g. BYU Football Players)
- Military Service

"Pretextual" attempt to maintain a "draconian, heavy-handed, "my way or the highway" rule.

*State of Ohio v. NCAA*, 706 F.Supp.3d 583, 588 (N.D. W.Va., Dec. 13, 2023),

# Likelihood of Success: Procompetitive Rationale

## No Cross-Market Justifications

- What market does the supposed procompetitive rationale impact?

- Preserving intercollegiate athletics may benefit consumers who watch college football, but does not benefit players who compose the impacted labor market.

"Jurists faced with weighing the anticompetitive effects in one market with the procompetitive effects in another cannot simply "net them out" mathematically… The court did not require that the NCAA prove that this impact on consumer demand had a corollary procompetitive impact on the market for Student-Athletes' services, that it 'increase[d] output' or 'widen[ed]' the choices 'available to athletes.' … Instead of requiring the NCAA to explain how those limits promote schools' competition for athletes, we leave Student-Athletes with little recourse under the antitrust laws"

*Alston v. Nat'l Collegiate Athletic Ass'n (In re Nat'l Collegiate Athletic Ass'n Athletic Grant-In-Aid Cap Antitrust Litig.)*, 958 F.3d 1239, 1269-71 (9th Cir. 2020), J. Smith, concurring.

# Likelihood of Success: Procompetitive Rationale

<u>NCAA Response 2:</u> <u>Enhance the experiences of student-athletes.</u>

How does forcing a player leave school after two years create a better experience?

- Only 19% of students graduate in 4 years, 36% at research universities
  https://www.nytimes.com/2014/12/02/education/most-college-students-dont-earn-degree-in-4-years-study-finds.html?_r=1 (Last visited Dec. 1, 2024).

- 64% graduate in six years
  https://nces.ed.gov/programs/coe/pdf/2022/ctr_508.pdf (last visited Dec. 1, 2024).

- JUCO students lose credits transferring

"The six-year period an athlete requires to complete both and JUCO associate degree and a bachelor's degree from an NCAA institution is precisely the same time as that a typical student takes to earn the same bachelor's degree." Maxcy Decl. ¶40.

Pavia has graduated and is pursuing a Masters

# Likelihood of Success: Procompetitive Rationale

<u>NCAA Response 2:</u>  <u>Enhance the experiences of student-athletes.</u>

NCAA alleges JUCO could be come "a football-focused way station"
Response at 32.

Compare to Canadian Hockey League (CHL):

- Players paid to play
- No educational component
- As of Nov. 2024, CHL players get four years of eligibility

15

# Likelihood of Success: Less Restrictive Alternative

## Current NCAA Bylaw 12.02.6

"Intercollegiate competition is considered to have occurred when a student-athlete in **either a two-year or a four-year** collegiate institution does any of the following...."

## Proposed NCAA Bylaw 12.02.6

"Intercollegiate competition is considered to have occurred when a student-athlete in **an NCAA** collegiate institution does any of the following...."

**Address all three anticompetitive effects:**
(1) Increases *quantity* of input;
(2) Removes pressure for inefficient labor choices; and
(3) Increases *quality* of output

16

# Likelihood of Success: Equities and Public Interest

## Equities: No Substantial Harm to NCAA

- "Here, the balance of the equities weighs heavily in favor of Plaintiffs because neither the NCAA nor any other affected individual or entity will face substantial harm with the issuance of an injunction, whereas, as explained above, student-athletes face irreparable harm." *Tennessee v. NCAA*, 718 F.Supp.3d 756, 765 (E.D. Tenn. 2024)

- "A prohibition on enforcing the [transfer bylaw at issue in that case] causes no harm to the NCAA or any other entity or individual. Such relief would merely prevent the enforcement of one of the NCAA's many bylaws, allowing student-athletes to compete in athletic events already scheduled to take place." *State of Ohio*, 706 F.Supp.3d at 600.

## Public Interest

- "Free and fair competition in labor markets is essential to the American economy. Protecting competition in the labor market for NCAA Division I college athletes serves the public's interest in free and fair competition in labor markets." *State of Ohio*, 706 F.Supp.3d at 600.

NCAA did not meaningfully contest either point.

17

# Irreparable Harm

"College students suffer irreparable harm when they are denied the opportunity to play sports."
*S.A. v. Sioux Falls School Dist.* 49-5, 2023 WL 6794207, at ~9 (D. S.D. Oct. 13, 2023)

"Courts have consistently held that, given the fleeting nature of college athletics, plaintiffs will suffer irreparable harm by losing the opportunity to participate in their sport of choice on a continuous and uninterrupted basis."
*Biediger v. Quinnipiac Univ.*, 616 F. Supp. 2d 277, 291 (D. Conn. 2009)

- Transfer Portal Opens Monday, December 9, 2024, But Players Are Already Declaring
  *See* https://www.si.com/fannation/college/cfb-hq/news/college-football-transfer-portal-tracker-2025 (Listing 22 of the "most impactful" players declaring an intention to enter transfer portal as of Dec. 4, 2024, including 9 quarterbacks)

- Diego is applying for entry in the Master in Legal Studies program at Vanderbilt

- If he fails to successfully negotiate an NIL deal with Vanderbilt, he needs time to go somewhere else – both academically and athletically.

18

# Irreparable Harm - Timing

NCAA eligibility rules are fluid since *Alston* (2021):

- Pavia came to NCAA in 2022

- Spring 2024 - Transfer restrictions eliminated

- September 2024 - Discussions about giving all players 5 years

- November 2024 - Canadian Hockey League players allowed four years of NCAA hockey

Pavia attempted good faith conversations with the NCAA before filing.

- NCAA cannot really expect first year players to file suit because they might want to challenge an eligibility rule that might be in effect three years later

19

## Scope of Injunction: Only Pavia

Enjoin enforcement of Bylaw 12.02.5 (and Bylaw 12.11.4.2: Rule of Restitution) *as to Pavia*:

- His 2021 junior college season will not count as a season of competition.

- He will be able to play in 2025-26

- If academics is a concern, reference that the relief is appropriate because he has already graduated

There are not "thousands" of other similarly situated:

- Each sport is different

- Likely only a hundred or so other football players similarly situated with respect to eligibility for next season

- Less if you factor in graduation with an undergraduate degree

20

24

21

# Conclusion

This is just like all of the other recent cases:

- *In re NCAA Athletic Grant-In-Aid Cap Antitrust Litig. (Alston)*, 375 F. Supp. 3d 1058 (N.D. Cal. 2019): Granting Permanent Injunction – Enjoining Rule Against NIL Payments;

- *State of Ohio v. NCAA*, 706 F.Supp.3d 583 (N.D. W.Va., Dec. 13, 2023): Granting Temporary Restraining Order after hearing – Enjoining Rule Against Transfers;

- *Tennessee v. NCAA*, 718 F.Supp.3d 756 (E.D. Tenn. 2024): Granting Preliminary Injunction – Enjoining NIL Recruiting Ban;

- *Masterson v. NCAA*, Civ. Action No. 1:24-cv-00734 (W.D.N.Y. 2024): NCAA Amends Bylaws Prior to Ruling on Injunctive Relief – Allows CHL Players Four Years of NCAA Eligibility

The purpose of antitrust analysis "is to form a judgment about the competitive significance of the restraint; it is not to decide whether a policy favoring competition is in the public interest, or in the interest of the members of an industry."

*National Society of Professional Engineers v. United States*, 435 U.S. 679, 98 S.Ct. 1355, 1364 (1978).