No. 24-6153

# In the United States Court of Appeals for the Sixth Circuit

**DIEGO PAVIA,**
*Plaintiff-Appellee,*

**v.**

**NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,**
*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE MIDDLE DISTRICT OF TENNESSEE,
NASHVILLE DIVISION

## APPELLANT'S REPLY BRIEF

Taylor J. Askew
David J. Zeitlin
Holland & Knight LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
(615) 244-6380
taylor.askew@hklaw.com
david.zeitlin@hklaw.com

Rakesh Kilaru (Counsel of Record)
Daniel Epps
Wilkinson Stekloff LLP
2001 M Street N.W., 10th Floor
Washington, DC 20036
(202) 847-4000
rkilaru@wilkinsonstekloff.com
depps@wilkinsonstekloff.com

*Counsel for Defendant-Appellant*
*National Collegiate Athletic Association*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................ ii

INTRODUCTION ..................................................................... 1

ARGUMENT ........................................................................... 3

    I.    The District Court Wrongly Disregarded Binding and Persuasive
Precedent Making Clear that Eligibility Rules are Not Commercial and
Thus are Not Subject to the Sherman Act. .................................... 3

    II.   The District Court Impermissibly Invalidated the Eligibility Rules at
Issue Here Using a "Quick Look." ............................................ 10

    III.  The District Court Committed Multiple Other Errors of Antitrust Law
in Concluding that Pavia Was Likely to Succeed on the Merits. ............... 15

    IV.  The District Court Erroneously Found that Pavia Would Suffer
Irreparable Harm Absent Injunctive Relief. ................................ 18

CONCLUSION ....................................................................... 21

CERTIFICATION OF COMPLIANCE ..................................................... 22

CERTIFICATE OF SERVICE ........................................................... 23

ADDENDUM: DESIGNATION OF RELEVANT RECORD DOCUMENTS: ........... 24

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                                    <u>Page(s)</u>

*Ante Brzovic v. NCAA*,
  2:25-cv-02885-DCN, 2025 WL 1370758 (D.S.C. May 11, 2025) ............. 8, 9, 14

*Arbolida v. NCAA*,
  No. 25-2079-JWB, 2025 WL 579830 (D. Kan. Feb. 21, 2025) ...........................8

*Bassett v. NCAA*,
  528 F.3d 426 (6th Cir. 2008) .................................................................3

*Batista v. Countrywide Home Loans, Inc.*,
  No. 15-cv-4522 (KM), 2015 WL 4022080 (D.N.J. June 29, 2015) ....................19

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
  429 U.S. 477 (1977) ..............................................................................16

*Buccaneer Energy (USA) Inc. v. Gunnison Energy Corp.*,
  846 F.3d 1297 (10th Cir. 2017) .............................................................12

*California ex rel. Harris v. Safeway, Inc.*,
  651 F.3d 1118 (9th Cir. 2011) ...............................................................14

*Citibank, N.A. v. Citytrust*,
  756 F.2d 273 (2d Cir. 1985) ...................................................................19

*Ciulla-Hall v. NCAA*,
  No. 25-cv-10271-DJC, 2025 WL 438707 (D. Mass. Feb. 7, 2025) .....................8

*Crookshanks v. Elizabeth Sch. Dist.*,
  No. 1:24-CV-03512-CNS-STV, 2025 WL 1000774 (D. Colo. Apr. 3, 2025 ......20

*D'Ambrosio v. Bagley*,
  688 F. Supp. 2d 709 (N.D. Ohio 2010) ...................................................4

*Darrah v. City of Oak Park*,
  255 F.3d 301 (6th Cir. 2001) .................................................................6

*First Tennessee Bank Nat. Ass'n v. Barreto*,
  268 F.3d 319 (6th Cir. 2001) .................................................................16

## Cases (Cont.)

*Fourqurean v. NCAA*,
   No. 25-cv-68-wmc, 2025 WL 993975 (Feb. 6, 20205 W.D. Wis.).......................8

*Goldstein v. NCAA*,
   No. 3:25-CV-27, 2025 WL 662809 (M.D. Ga., Feb. 28, 2025) .................... 6, 7, 8

*Hutto v. Davis*,
   454 U.S. 370 (1982)........................................................................4

*In re NCAA Athletic Grant-in-Aid Cap Antitrust Litig.*,
   375 F. Supp. 3d 1058 (N.D. Cal. 2019) ...................................................9

*In re Se. Milk Antitrust Litig.*,
   739 F.3d 262 (6th Cir. 2014) ...................................................... 12, 14

*In re Stanton*,
   457 B.R. 80 (Bankr. D. Nev. 2011) .......................................................6

*Key v. Qualcomm Inc.*,
   129 F.4th 1129 (9th Cir. 2025) ..........................................................15

*Nat'l Hockey League Players' Ass'n  v. Plymouth Whalers Hockey Club*,
   325 F.3d 712 (6th Cir. 2003) ...................................................... 11, 15, 17

*NCAA v. Alston*,
   594 U.S. 69  (2021)............................................................. *passim*

*Ng v. Bd. of Regents of Univ. of Minnesota*,
   64 F.4th 992 (8th Cir. 2023) .............................................................19

*O'Bannon v. NCAA*,
   802 F. 3d 1049 (9th Cir. 2015) ...........................................................5

*Ohio v. NCAA*,
   706 F. Supp. 3d 583 (N.D. W. Va. 2023) ........................................... 9, 10

*Osuna Sanchez v. NCAA*,
   No. 3:25-CV-62, 2025 WL 684271 (E.D. Tenn., Mar. 3, 2025)................... *passim*

## Cases (Cont.)

*Pippin v. Playboy Ent. Grp., Inc.*,
   No. 8:02CV2329T30EAJ, 2003 WL 21981990 (M.D. Fla. July 1, 2003) ..........20

*Romo v. Largen*,
   723 F.3d 670 (6th Cir. 2013) ..................................................................4

*Tennessee v. NCAA*,
   718 F. Supp. 3d 756 (E.D. Tenn. 2024)..................................................9

*Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*,
   60 F.3d 27 (2d Cir. 1995) ....................................................................19

*Tucson Indoor Football LLC v. FBG Enters. Opco LLC*,
   No. CV-24-00086-TUC-SHR, 2024 WL 639930 (D. Ariz. Feb. 15, 2024).........20

*United States v. Aiyer*,
   33 F.4th 97 (2d Cir. 2022) ...................................................................14

*United States v. Wehunt*,
   230 F. Supp. 3d 838 (E.D. Tenn. 2017)..................................................4

*Worldwide Basketball & Sport Tours, Inc. v. NCAA*,
   388 F.3d 955 (6th Cir. 2004) ...................................................... *passim*

## Rules

Fed. R. App. P. 32(a)(6).........................................................................22

Fed. R. App. P. 32(a)(7)(B)(i)................................................................22

# **INTRODUCTION**

In declaring the NCAA's longstanding eligibility rules unlawful and awarding Pavia a preliminary injunction allowing him to compete for a sixth year, the district court committed multiple independent errors of law. As explained in the NCAA's Opening Brief, the district court ignored binding decisions from this Court holding the NCAA's eligibility rules to be non-commercial and thus outside the scope of the antitrust laws; mistakenly applied "quick look" review to strike down the NCAA's eligibility rules rather than the full rule of reason inquiry demanded by precedent from this Court and the Supreme Court; committed significant errors of antitrust law at every step of its "quick look" analysis; and mistakenly concluded that Pavia would suffer irreparable harm from denial of the extraordinary relief of a preliminary injunction, despite his long and inexcusable delay in bringing suit. Each of these errors alone requires reversal; combined, they reveal a gravely flawed decision that urgently calls out for correction.

Pavia offers no persuasive arguments in response and instead resorts largely to misdirection. His primary strategy is attempting to recast the district court's *legal errors* as factual findings subject to deferential review. That Pavia resorts to this tactic serves to underscore how indefensible the district court's rulings are on their own terms. The few legal arguments Pavia does make miss the mark. Pavia's claim that *Alston sub silentio* overruled this Court's precedents regarding eligibility

misconstrues *Alston* and the proper role of a district court confronted with binding circuit precedent. His assertion that the district court did not apply "quick look" review because it recited the elements of the rule of reason is a non sequitur—"quick look" is a form of the rule of reason, and it is evident from the district court's words and analysis that it looked through the wrong legal lens. And that decision colored every step of its flawed analysis of the merits, which Pavia largely repeats rather than defending.

Beyond all these specific errors, the bigger picture also matters. NCAA rules, by their very nature, govern competition between teams of college students. NCAA rules must, then, inevitably define who actually *is* a college student. The NCAA's current eligibility rules do exactly that. Pavia has not met his burden to show that he is likely to succeed in establishing that how the NCAA has chosen to define a college student is an antitrust violation. And while his challenge is built to benefit a class of one to achieve his goal of letting *him* play for one more year, the implications of a ruling on Pavia's behalf could be far-reaching and devastating for college sports as a whole.

The decision below has already created significant chaos by disrupting a long-settled judicial consensus. The Court should bring that to an end and promptly reverse.

## <u>ARGUMENT</u>

**I.    The District Court Wrongly Disregarded Binding and Persuasive Precedent Making Clear that Eligibility Rules are Not Commercial and Thus are Not Subject to the Sherman Act.**

The district court dismissed out of hand extensive circuit precedent holding that NCAA eligibility requirements are not commercial. *See* Opening Br. 22–31. That includes *Bassett v. NCAA*, which declared in no uncertain terms that NCAA "eligibility rules . . . are all explicitly non-commercial. In fact, those rules are *anti-commercial* and designed to promote and ensure competitiveness amongst NCAA member schools." 528 F.3d 426, 433 (6th Cir. 2008); *see also Worldwide Basketball & Sport Tours, Inc. v. NCAA*, 388 F.3d 955, 959 (6th Cir. 2004) (stating that in challenges to an NCAA rule, "[t]he dispositive inquiry . . . is whether the rule itself is commercial, not whether the entity promulgating the rule is commercial"). As *amici curiae*—who represent thousands of higher education institutions in the United States—have explained, it cannot be the case that all NCAA eligibility rules are commercial because they may "indirectly affect" who has the opportunity to pursue NIL deals. Br. *Amicus Curiae* of American Council on Education *et al.* 13 ("ACE Br."). This is especially true given that "[t]he vast majority of student-athletes . . . will earn little—if any—money from [NIL] deals." *Id.* at 4–5.

In addition to rejecting circuit precedent, the district court cast aside a great deal of persuasive authority from other circuits and districts to the same effect. The

district court erred, both procedurally and substantively, in rejecting this large body of binding and persuasive precedent. It is a fundamental tenet of a hierarchical judicial system that lower courts must follow the precedent of a higher court. *See, e.g.*, *Hutto v. Davis*, 454 U.S. 370, 375 (1982) ("[U]nless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be."). District courts are thus bound to follow Sixth Circuit precedent unless and until it is overruled. *See, e.g.*, *D'Ambrosio v. Bagley*, 688 F. Supp. 2d 709, 721 (N.D. Ohio 2010) ("This is a district court, and it must follow binding precedent when such precedent exists.").

In rare circumstances, a district court may conclude that a recent decision so undermines circuit precedent that it is no longer binding. But if an "intervening decision neither expressly nor implicitly overrules the prior Sixth Circuit decision" a district court "must be extremely careful in concluding that circuit precedent is no longer good law, and should only deviate from such authority where it is powerfully convinced that the circuit will overrule itself at the next available opportunity." *United States v. Wehunt*, 230 F. Supp. 3d 838, 846 (E.D. Tenn. 2017) (quotation marks and citation omitted); *cf. Romo v. Largen*, 723 F.3d 670, 675 (6th Cir. 2013) (lower courts should anticipate the overruling of Supreme Court precedent based only on "the most compelling of inferences from intervening cases").

Here, the district court did not even try to explain how it could have been "powerfully convinced" that this Court's precedent had been abrogated *sub silentio*. It justified casting aside binding precedent by gesturing at "the post-*Alston* world in which student-athletes can obtain NIL compensation," and accepting Pavia's argument that "*Bassett*, *Gaines*, and other pre-*Alston* cases cited by the NCAA simply do not apply." (R. 41, Mem., PID#1405.) That is not enough for a lower court to declare it is relieved from the burden of following a higher court's precedent.

And in any event, the district court was wrong on the merits. *Alston* did not implicitly declare that all NCAA rules are commercial or abrogate all existing circuit precedents dealing with antitrust challenges to NCAA rules. Instead, *Alston* "involve[d] only a *narrow subset* of the NCAA's compensation rules—namely, the rules restricting the education-related benefits that student athletes may receive." *NCAA v. Alston*, 594 U.S. 69, 108 (2021) (Kavanaugh, J., concurring) (emphasis added; original emphasis omitted). And while Pavia claims to find support in *O'Bannon v. NCAA*, Pavia Br. 17, he ignores that *O'Bannon* explicitly noted that "true 'eligibility' rule[s]" include "the rules limiting the number of years that student-athletes may play collegiate sports" and did not purport to disturb them. 802 F. 3d 1049, 1066 (9th Cir. 2015).

Pavia says little in response to this straightforward analysis. He claims that the NCAA "ignores *Alston* . . . and *O'Bannon*," but that is a puzzling assertion given

that the NCAA's Opening Brief discusses both cases extensively. Pavia Br. 2 (footnotes omitted). He complains that the precedent that the district court dismissed is "decades old," but that is a meaningless observation. Pavia Br. 2. Circuit precedent has no expiration date; if anything, the age of a case counsels in *favor* of its value as precedent. *See Darrah v. City of Oak Park*, 255 F.3d 301, 310 (6th Cir. 2001) ("[W]hen a later decision of this court conflicts with one of our prior published decisions, we are still bound by the holding of the earlier case."); *cf. In re Stanton*, 457 B.R. 80, 89 (Bankr. D. Nev. 2011) ("[N]o matter how old, Supreme Court precedent is still binding precedent, and must be followed.").

Last, Pavia tries to paint a picture of an emerging judicial consensus in favor of his position, but his account is both incomplete and incorrect. Pavia Br. 2. As a starting point, he relegates to two footnotes any discussion of recent and on-point decisions, *Goldstein v. NCAA*, No. 3:25-CV-27, 2025 WL 662809 (M.D. Ga., Feb. 28, 2025), and *Osuna Sanchez v. NCAA*, No. 3:25-CV-62, 2025 WL 684271 (E.D. Tenn., Mar. 3, 2025), both of which underscore why the NCAA is correct here. *See* Pavia Br. 15 n.10, 17 n.12.

Take *Goldstein* first. That case soundly rejected the precise argument that Pavia makes: that *Alston* declared that all NCAA rules, eligibility or otherwise, are commercial and thus suspect under the antitrust laws. *See* 2025 WL 662809 at *4 ("In the Court's view . . . *Alston* is more scalpel than ax."). Pavia's only response is

6

that the *Goldstein* court "appears unaware" of the district court's factual findings in this case. Pavia Br. 17 n.12. But that assertion is just plain wrong, because *Goldstein* actually *cited the decision below in this case*. *See* 2025 WL 662809, at *3, 5, 6 n.11 (citing the *Pavia* district court decision). If there was any doubt that the *Goldstein* court was fully familiar with the record in this case, it is dispelled by the fact that *Goldstein* cited to Pavia's expert's response itself. *See id.* at *5 (citing Maxcy response).

*Osuna Sanchez* is similarly on point. The Court there recognized that "characterizing all eligibility rules as commercial, which is the logical end to Plaintiff's position, may overextend *Alston* and contravene the Sixth Circuit's instruction to consider only 'the rule itself' when conducting this inquiry." 2025 WL 684271, at *4. The Court was willing to assume *arguendo* that the eligibility rules at issue there (essentially the same ones at issue here) were commercial, but nevertheless found the record insufficient to invalidate the rules under the rule of reason at the preliminary injunction phase. *See id.* at *4–*7. Pavia's only response is that "[b]aseball is a different sport than football with different physical development requirements and different rules concerning eligibility for the professional draft." Pavia Br. 15 n.10. But nothing in *Osuna Sanchez* suggested the Court's analysis turned on baseball-specific reasoning.

The *Osuna Sanchez* court's fear about the "logical end" of the plaintiff's

argument is well-founded. If all eligibility rules are commercial, inventive plaintiffs will challenge numerous rules critical to the basic functioning of the college athletics system, and courts will have no choice but to subject those requirements to antitrust scrutiny—threatening the foundations of the college sports. Indeed, the explosion of litigation involving eligibility rules following the district court's decision underscores the concern. *See, e.g.*, *Fourqurean v. NCAA*, No. 25-cv-68-wmc, 2025 WL 993975 (Feb. 6, 2025 W.D. Wis.); *Ciulla-Hall v. NCAA*, No. 25-cv-10271-DJC, 2025 WL 438707 (D. Mass. Feb. 7, 2025); *Arbolida v. NCAA*, No. 25-2079-JWB, 2025 WL 579830 (D. Kan. Feb. 21, 2025); *Goldstein*, 2025 WL 662809; *Osuna Sanchez v. NCAA*, 2025 WL 684271; *Smith v. NCAA*, 25CV003480-310 (N.C. Super. Ct. Apr. 24, 2025); *Jones v. NCAA*, 25CV003492-310 (N.C. Super. Ct. Apr. 24, 2025); *Elad v. NCAA*, No. 25-1981 (ZNQ) (JTQ), 2025 WL 1202014 (D.N.J. Apr. 25, 2025); *Brzovic v. NCAA*, No. 2:25-cv-02885-DCN, 2025 WL 1370758 (D.S.C. May 11, 2025); *Coley v. NCAA*, No. 5:25-cv-00098-D-BM (E.D.N.C.); *Johnson v. NCAA*, 9:25-cv-00060-KLD (D. Mont.).

In fact, the judicial support for the NCAA's position has only grown during this case's pendency on appeal. Two days before this reply brief was due to be filed, the United States District Court for the District of South Carolina agreed with the *Goldstein* and *Osuna Sanchez* courts in a squarely on-point decision. The court stated that it was "not convinced that the Five-Year Rule is subject to antitrust law"

and thus vulnerable to challenge under Section 1. *Brzovic*, 2025 WL 1370758, at *4. As in *Osuna Sanchez*, the *Brzovic* court rejected plaintiff's contention that *Alston* requires courts to consider anything beyond the challenged restraint itself when analyzing whether a challenged restraint is commercial in nature. *Id.* ("Brzovic argues that the court should view the Five-Year Rule as commercial in nature and purpose, rather than merely an eligibility rule, following the Supreme Court's decision in *Alston*. The court disagrees." (citation omitted)). As the court noted, "[t]he text of the Five-Year Rule contains only regulations and guidance on student-athlete eligibility to participate in intercollegiate athletics—the text does not include any mention of business or commercial transactions." *Id.*

The few cases Pavia relies on have nothing to do with the issue here. Two did not deal with eligibility rules at all. *Tennessee v. NCAA*, 718 F. Supp. 3d 756 (E.D. Tenn. 2024), was a challenge to NCAA rules imposing certain restrictions on third-party collectives offering name, imagine, and likeness deals to potential student-athletes. As for the district court's decision in *Alston*, the plaintiffs there did *not* challenge eligibility rules. Instead, they challenged "the current, interconnected set of NCAA rules that limit the compensation they may receive in exchange for their athletic services," which are more clearly commercial. *In re NCAA Athletic Grant-in-Aid Cap Antitrust Litig.*, 375 F. Supp. 3d 1058 (N.D. Cal. 2019).

As for *Ohio v. NCAA*, 706 F. Supp. 3d 583 (N.D. W. Va. 2023), it dealt with

NCAA rules governing eligibility of players who *transferred* from one school to another. But that case took for granted, and did not question, the five-year rule that Pavia here challenges; indeed, the court's finding of irreparable harm rested in part on the five-year rule itself. *See id.* at 592 n.3 ("These considerations are magnified given that student-athletes have five (5) calendar years to complete their four (4) seasons of eligibility in any one sport pursuant to NCAA Bylaw Rule 12.8.1."). The *Ohio* court presumably took for granted that the five-year rule is legitimate—as has essentially everyone prior to the ruling below. *Cf. Alston*, 594 U.S. at 110 (Kavanaugh, J., concurring) ("Everyone agrees that the NCAA can require student athletes to be enrolled students in good standing."). In any event, the *Ohio* court never even explained why the rule in that case qualified as commercial. Nor did the court there need to wriggle out of binding circuit precedent.

For these reasons, the district court erred by failing to follow both binding and persuasive precedent making clear that the eligibility rules at issue here are not commercial and thus not subject to the antitrust laws.

## II.    The District Court Impermissibly Invalidated the Eligibility Rules at Issue Here Using a "Quick Look."

The district court further erred by declaring the NCAA's eligibility rules illegal based on a "quick look," rather than subjecting those rules to a full rule of reason analysis as required by precedent. *See* Opening Br. 32–35. In *Alston*, the Supreme Court concluded that the plaintiffs' antitrust challenge to NCAA

compensation rules "present[ed] complex questions requiring more than a blink to answer." 594 U.S. at 91; *see also id.* at 108 (Kavanaugh, J., concurring) (explaining that the majority opinion made clear that NCAA *compensation* rules "should receive *ordinary* 'rule of reason' scrutiny under the antitrust laws." (emphasis added)).

Indeed, in the context of sports eligibility rules, this Court has held that courts are required to apply a full-scale rule of reason analysis. *See Nat'l Hockey League Players' Ass'n v. Plymouth Whalers Hockey Club*, 325 F.3d 712, 717–20 (6th Cir. 2003) ("*NHLPA*"). This Court has likewise held that challenges to NCAA rules in particular are not "suitable for quick-look analysis." *Worldwide Basketball*, 388 F.3d at 961.

Rather than justify the district court's reasoning, Pavia inexplicably denies that the district court engaged in quick-look analysis at all. Pavia Br. 19 ("[T]he NCAA incorrectly asserts that the district court utilized a 'quick look' methodology rather than applying the Rule of Reason."). This argument ignores what the district court said and did. The district court stated that it was "comfortable on the record at this juncture concluding in the 'twinkling of an eye' that the Intercollegiate Competition Rules are restraints on trade with substantial anticompetitive effects for the purpose of the instant motion." (R. 41, Mem., PID#1416.) That is the essence of quick-look review. *See, e.g.*, *Worldwide Basketball*, 388 F.3d at 961 (noting that "the rule of reason can sometimes be applied in the twinkling of an eye" but cautioning

that "this abbreviated or 'quick-look' analysis" is appropriate only under certain circumstances (quotation marks and citation omitted)); *Buccaneer Energy (USA) Inc. v. Gunnison Energy Corp.*, 846 F.3d 1297, 1311 n.16 (10th Cir. 2017) (noting that "'the twinkling of an eye' . . . is language used synonymously with 'quick look'"). But if there were any doubt, the district court *itself* made clear that it understood "the twinkling of an eye" to mean "quick look." (*See* R. 41, Mem., PID#1407.) ("Restraints at opposite ends of the spectrum may be approved or condemned *in the 'twinkling of an eye' with a 'quick look.'*" (emphasis added)).

Pavia seems to contend that the district court could not have engaged in quick-look review because it "walk[ed] through the Rule of Reason framework." Pavia Br. 19. But that misunderstands what "quick look" review is. Rather than a wholly different approach, "quick look" review is a *type* of rule of reason analysis. *See, e.g.*, *Worldwide Basketball*, 388 F.3d at 960 ("When applying the rule of reason, the courts have occasionally applied what has come to be called an abbreviated or 'quick-look' analysis."); *In re Se. Milk Antitrust Litig.*, 739 F.3d 262, 275 (6th Cir. 2014) (noting that "[t]he district court did not distinguish between the two types of rule of reason analysis . . .—the full rule of reason analysis and the quick-look form of analysis.").

Pavia next tries to rely on the length of the district court opinion, touting that it "spent a dozen pages" on its antitrust analysis. Pavia Br. 24. But a page count is

not the measure of whether a court faithfully applied the full-scale rule of reason. Here, the district court declared the challenged rules anticompetitive on a sparse record developed on an expedited basis, relying exclusively on Pavia's still sparser expert declaration, and rejecting the NCAA's expert and evidence in a conclusory fashion. Its cursory "quick look" application of the rule of reason looks nothing like *Alston*, where the district court "conducted a 10-day bench trial," "heard experts and lay witnesses from both sides, and received volumes of evidence and briefing, all before issuing an exhaustive decision." 594 U.S. at 80. That same disparity is why the *Osuna Sanchez* court—confronted with an undeveloped record, like the one here, consisting essentially of two brief, competing economics declarations—declined to apply "quick look" to rule for the plaintiff:

> Critically, *Alston* made its way to the Supreme Court after a ten-day bench trial and with a "voluminous record." It was the "voluminous record" that led the district court to conclude that the relevant NCAA rules produced substantial anticompetitive effects. The record in this case is far from voluminous. To the contrary, this lawsuit was filed just over two weeks ago, and the parties' evidence of the challenged restraint's anticompetitive effects (or lack thereof) is mostly limited to brief declarations from two economists who offer vastly different views. This case's current posture and its largely undeveloped record causes the Court to question whether it can readily characterize the challenged restraint as anticompetitive after only a "quick look."

*Osuna Sanchez*, 2025 WL 684271, at *4 (citations omitted).

*Brzovic* is to the same effect. Faced with a record similar to the one here—including the use of the same economist that Pavia himself relied on for his

supporting declaration—the court concluded that it lacked "a sufficient record to perform a proper, fact-intensive rule of reason analysis" of the plaintiff's Section 1 claims. *Brzovic*, 2025 WL 1370758, at *4. That was because Brzovic, like Pavia, had "provided only a cursory, unsubstantiated definition of the relevant market." Moreover, at the *Brzovic* hearing, the economist's testimony revealed that he could not have performed a rule of reason analysis in that or any case because he "testified that a substantial amount—if not all—of the econometric data and empirical analysis required for the court to properly perform a rule of reason analysis in this matter does not exist." *Id.* Put differently, the district court in this case clearly performed a "quick look" because it lacked the evidence necessary to do anything else.

Pavia also tries to recast the NCAA's challenge as to the district court's factual findings. *See* Pavia Br. 6–8. But the "district court's decision to use the rule of reason is a question of law, which [this Court] review[s] de novo." *In re Se. Milk Antitrust Litig.*, 739 F.3d at 271; *see also, e.g.*, *California ex rel. Harris v. Safeway, Inc.*, 651 F.3d 1118, 1124 (9th Cir. 2011) (noting that "[t]he selection of the proper mode of antitrust analysis is a question of law which we review *de novo*"); *United States v. Aiyer*, 33 F.4th 97, 113 (2d Cir. 2022) (similar). The district court's failure correctly to apply the rule of reason was thus an independent legal error requiring reversal.

**III.    The District Court Committed Multiple Other Errors of Antitrust Law in Concluding that Pavia Was Likely to Succeed on the Merits.**

Even if the district court could be understood as applying the full-bore rule of reason, it committed numerous other errors of antitrust law on the way to concluding that Pavia was likely to succeed on the merits. *See* Opening Br. 35–43.

*First*, Pavia failed to demonstrate anticompetitive effects in the relevant market in which the allegedly anticompetitive conduct occurred. "A threshold step in any antitrust case is to accurately define the relevant market." *Key v. Qualcomm Inc.*, 129 F.4th 1129, 1145 (9th Cir. 2025) (quotation marks omitted). "The burden is on the antitrust plaintiff to define the relevant market within which the alleged anticompetitive effects of the defendant's actions occur," *Worldwide Basketball*, 388 F.3d at 962, and "[f]ailure to identify a relevant market is a proper ground for dismissing a Sherman Act claim." *NHLPA*, 325 F.3d at 719–20 (quotation marks omitted).

Here, Pavia initially sought to define the market as "the market for Division 1 football players," but then pivoted at the last minute, in an expert declaration labeled a "Response" to the NCAA's expert, to contending that the relevant market was the market for college football players more generally, one in which NCAA Division I schools compete with junior colleges. Opening Br. 36. The district court relied on Pavia's newly alleged market, even though his expert conducted none of the analysis required to substantiate that such a market exists. *See id.*

15

Pavia once again claims this is a factual issue subject to clear-error review, but the district court's failure to hold Pavia to his burden of defining a relevant market was so profound as to constitute an error of law. *See First Tennessee Bank Nat. Ass'n v. Barreto*, 268 F.3d 319, 326 (6th Cir. 2001) ("[A] district court's allocation of the burden of proof is a question of law subject to *de novo* appellate review.").

The district court also erred in finding that Pavia demonstrated anti-competitive harm in Pavia's unproven market. That, again, was a question on which Pavia bore the burden of proof, which he did not meet. *See Worldwide Basketball*, 388 F.3d at 959. That is particularly so because the district court focused on harm only to Pavia (or at most a small group of similarly situated athletes) rather than harm to competition generally in a relevant market. That is not how the antitrust laws work. *See, e.g.*, *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977) ("The antitrust laws . . . were enacted for the protection of *competition* not *competitors*." (quotation marks omitted)).

Here, Pavia's response is to proffer yet another *new* market, one which he has never tried to prove: "the market for transfers to Division I Football Bowl Subdivision ("FBS") schools." Pavia Br. 12. Pavia suggests the NCAA contradicts itself by acknowledging that Pavia's requested injunctive relief could affect thousands of college athletes—but arguing that an injunction would have a real-

world *effect* is not the same thing as asserting that an injunction would create "an *injury* to a definable market." *NHLPA*, 325 F.3d at 720 (emphasis added).

Moving to the second step of the rule of reason, the district court barely considered the procompetitive justifications put forward by the NCAA. As the *amici* explain, those benefits are significant. Among other benefits (such as ensuring that each year a new cohort of student athletes has a chance to participate in college athletics), the NCAA's "eligibility rules [are] designed to ensure the primacy of the educational context for the student-athlete experience. . . . [T]he challenged five-year time limitation aligns with the educational context for undergraduates (who make up the vast majority of intercollegiate athletes) and prevents intercollegiate athletics from becoming an indefinite detour from—rather than a complement to—education." ACE Br. 5.

Pavia offers no substantive response; instead, he (again) emphasizes only the page count for the section of the district court's opinion addressing the issue and recites the district court's factual findings. Pavia Br. 22–23. Simply parroting the district court's opinion is not a response to the NCAA's arguments for why that ruling was wrong.

Last, the district court's analysis of Pavia's proposed less restrictive means was unduly strict. As *Alston* made clear, "antitrust law does not require businesses to use anything like the least restrictive means of achieving legitimate business

purposes." 594 U.S. at 98. Instead, the Plaintiff must prove there are "*substantially less restrictive means . . . to achieve any proven procompetitive benefits.*" *Id.* at 100 (emphasis added). Far from satisfying that standard, the district court's decision to grant relief for one individual player "presages a future filled with judicial micromanagement of legitimate business decisions"—exactly what *Alston* forbids. *Id.* at 101; *see also* ACE Br. 5 ("The District Court's preliminary injunction threatens to shift the formulation and enforcement of the NCAA's eligibility rules from educators and athletics administrators to federal courts."). Continuing a theme, Pavia asserts that the NCAA "makes no attempt to explain how [the district court's reasoning] is clearly erroneous," Pavia Br. 24. But, again, the district court's error was not a factual finding; it was the legal error of applying an improper and overly stringent least-restrictive-means analysis.

These errors of established antitrust law, in their totality, completely undercut the district court's conclusion that Pavia would likely succeed on the merits. They, too, require reversal of the judgment below.

## IV.   The District Court Erroneously Found that Pavia Would Suffer Irreparable Harm Absent Injunctive Relief.

Among the many flaws with its decision, the district court also erred in concluding that Pavia had shown the irreparable harm necessary to obtain injunctive relief. Pavia's years-long delay in bringing suit, even though the challenged rules have been in place for decades and he long knew how many years of eligibility those

rules provided him, means that he cannot show irreparable harm. *See* Opening Br. 44–46; *see also, e.g.*, *Ng v. Bd. of Regents of Univ. of Minnesota*, 64 F.4th 992, 997 (8th Cir. 2023) ("[A]n unreasonable delay in moving for the injunction can undermine a showing of irreparable harm and is a sufficient ground to deny a preliminary injunction." (quotation omitted); *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) (observing that "a particular period of delay" may "indicate an absence of the kind of irreparable harm required to support a preliminary injunction"); *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 39 (2d Cir. 1995) ("A district court should generally consider delay in assessing irreparable harm.").

Here, Pavia has little to say. He parrots the district court's reference to "the constant evolution of the NCAA Bylaws since [*Alston*] and reports that the NCAA announced that it was considering providing five seasons of eligibility to athletes over the course of five years." Pavia Br. 25 (quoting Mem. 23). But that Pavia hoped that the NCAA rules would change is no excuse for his failure to sue earlier— especially given that he waited until the last minute in order to manufacture an emergency. *See, e.g.*, *Batista v. Countrywide Home Loans, Inc.*, No. 15-cv-4522 (KM), 2015 WL 4022080, at *2 (D.N.J. June 29, 2015) (finding insufficient irreparable harm and denying a preliminary injunction where "circumstances suggest that the emergency is self-created"); *Tucson Indoor Football LLC v. FBG*

19

*Enters. Opco LLC*, No. CV-24-00086-TUC-SHR, 2024 WL 639930, at *2 (D. Ariz. Feb. 15, 2024) (denying a temporary restraining order for lack of irreparable harm where "Plaintiff created the so-called emergency by its delay"); *Crookshanks v. Elizabeth Sch. Dist.*, No. 1:24-CV-03512-CNS-STV, 2025 WL 1000774, at *6 n.4 (D. Colo. Apr. 3, 2025) (denying a preliminary injunction where the plaintiff's decision to "manufacture an injury is its own doing and will not create an irreparable harm").

The most plausible explanation for Pavia's delay is that he only now believes, in late of ongoing legal developments, that his claims might have some chance of success despite being squarely foreclosed by precedent. But a plaintiff who delays in bringing suit for strategic reasons cannot establish irreparable harm. *See, e.g.*, *Pippin v. Playboy Ent. Grp., Inc.*, No. 8:02CV2329T30EAJ, 2003 WL 21981990, at *2 (M.D. Fla. July 1, 2003) ("Delay, or too much of it, indicates that a suit or request for injunctive relief is more about gaining an advantage . . . than protecting a party from irreparable harm.").

\* \* \*

While the district court's preliminary injunction in this case directly applied only to one college athlete—Pavia himself—its implications sweep across college athletics as a whole. Those implications are dangerous and threaten college sports as a whole. The fundamental nature of college athletic competition is that the

competitors are *college students*. That is only possible with rules defining who is eligible to compete. If a court can cast aside one of the NCAA's basic eligibility rules in the twinkling of an eye, many plaintiffs will challenge—and, indeed, have challenged—more of the basic tenets of college sports, jeopardizing the premise of the entire college athletic system. This Court should hold that Sherman Act does not demand that result and reverse the district court's grant of a preliminary injunction.

## CONCLUSION

For the reasons set forth above, the NCAA respectfully requests that this Court reverse the preliminary injunction issued by the district court.

Dated: May 13, 2025                      Respectfully submitted,

By: */s/ Taylor J. Askew*                By: */s/ Rakesh Kilaru*
Taylor J. Askew                          Rakesh Kilaru (Counsel of Record)
David J. Zeitlin                         Tamarra Matthews Johnson
Holland & Knight LLP                     Wilkinson Stekloff LLP
511 Union Street, Suite 2700             2001 M Street N.W., 10th Floor
Nashville, Tennessee 37219               Washington, DC  20036
(615) 244-6380                           (202) 847-4000
taylor.askew@hklaw.com                   rkilaru@wilkinsonstekloff.com
david.zeitlin@hklaw.com                  tmatthewsjohnson@wilkinsonstekloff.com
                                         depps@wilkinsonstekloff.com
                                         *Counsel for Defendant-Appellant National*
                                         *Collegiate Athletic Association*

## CERTIFICATION OF COMPLIANCE

I hereby certify:

1.    This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(i) because it contains approximately **5,095 words**.

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14- point font.

Dated: May 13, 2025

                                                          /s/   Rakesh Kilaru
                                                        RAKESH KILARU

## <u>CERTIFICATE OF SERVICE</u>

I, Rakesh Kilaru, counsel for appellant and a member of the Bar of this Court, certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system on May 13, 2025. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: May 13, 2025

  /s/  Rakesh Kilaru
RAKESH KILARU

## ADDENDUM: DESIGNATION OF RELEVANT RECORD DOCUMENTS:

| District Court Dkt. | Description | Page ID # |
|---|---|---|
| R. 41 | Memorandum regarding Motion for Preliminary Injunction | 1395-1419 |

24