No. 24-6153

# In the United States Court of Appeals for the Sixth Circuit

**DIEGO PAVIA,**
*Plaintiff-Appellee,*

**v.**

**NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,**
*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE MIDDLE DISTRICT OF TENNESSEE,
NASHVILLE DIVISION

## APPELLANT'S SUPPLEMENTAL BRIEF

Taylor J. Askew
David J. Zeitlin
Holland & Knight LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
(615) 244-6380
taylor.askew@hklaw.com
david.zeitlin@hklaw.com

Rakesh Kilaru (Counsel of Record)
Daniel Epps
Wilkinson Stekloff LLP
2001 M Street N.W., 10th Floor
Washington, DC 20036
(202) 847-4000
rkilaru@wilkinsonstekloff.com
depps@wilkinsonstekloff.com

*Counsel for Defendant-Appellant*
*National Collegiate Athletic Association*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................................... i

TABLE OF AUTHORITIES ............................................................................... ii

INTRODUCTION ............................................................................................... 1

ARGUMENT ...................................................................................................... 5

I.    The House Settlement Does Not Undermine The Validity Of The Five-Year Rule ... 5

    A. The Five-Year Rule Remains Non-Commercial and Outside the Purview of the Sherman Act. .................................................................................. 6

    B. The Five-Year Rule Has No Anticompetitive Effects and Is Justified by Recognized Procompetitive Rationales. ............................................ 10

II.   This Appeal Is Not Moot. ........................................................................ 13

CONCLUSION ................................................................................................. 16

CERTIFICATION OF COMPLIANCE .......................................................... 18

CERTIFICATE OF SERVICE ........................................................................ 19

ADDENDUM: RELATED CASES AND DISPOSITIONS ............................ 20

ADDENDUM: DESIGNATION OF RELEVANT RECORD DOCUMENTS ... 24

ADDENDUM: UNPUBLISHED DISPOSITIONS CITED IN BRIEF ........... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                     **Page(s)**

*Bassett v. NCAA,*
    528 F.3d 426 (6th Cir. 2008) ...................................................................... 6

*Bonnell v. Lorenzo,*
    241 F.3d 800 (6th Cir. 2001) .................................................................... 14

*Boyd v. NCAA,*
    No. 3:25-cv-00729, 2025 WL 2432200 (M.D. Tenn. Aug. 22, 2025) ............ 3, 11, 13

*Brown v. Yost,*
    122 F.4th 597 (6th Cir. 2024) .................................................................... 16

*Chirco v. Gateway Oaks, L.L.C.,*
    384 F.3d 307 (6th Cir. 2004) .................................................................... 16

*Fialka-Feldman v. Oakland Univ. Bd. of Trs.,*
    639 F.3d 711 (6th Cir. 2011) .................................................................... 16

*Fourqurean v. NCAA,*
    143 F.4th 859 (7th Cir. 2025) ...............................................................2, 7, 10

*Gannett Co. v. DePasquale,*
    443 U.S. 368 (1979) ................................................................................ 14

*Gannet Co. v. DePasquale,*
    534 U.S. 951 (2001) ................................................................................ 14

*Giles v. NCAA,*
    No. 8:25-CV-01488 (C.D. Cal. Aug. 18, 2025) ........................................2, 8

*In re College Athlete NIL Litig.,*
    No. 20-CV-03919, 2025 WL 1675820 (N.D. Cal. June 6, 2025) ................... 3

*Johnson v. NCAA,*
    No. CV 25-60, 2025 WL 1790345 (D. Mont. June 26, 2025)...................2, 8, 11

*Kerr for Kerr v. Comm'r of Soc. Sec.,*
    874 F.3d 926 (6th Cir. 2017) .................................................................... 15

*Lawrence v. Blackwell*,
    430 F.3d 368 (6th Cir. 2005) .................................................................4, 14

*McCormack v. NCAA*,
    845 F.2d 1338 (5th Cir. 1988) ....................................................................12

*Nader v. Volpe*,
    475 F.2d 916 (D.C. Cir. 1973) ...................................................................15

*NCAA v. Alston*,
    594 U.S. 69 (2021) ...........................................................................1, 8, 9

*O'Bannon v. NCAA*,
    802 F.3d 1049 (9th Cir. 2015) ......................................................................8

*Pavia v. NCAA*,
    760 F. Supp. 3d 527 (M.D. Tenn. 2024)................................................7, 11

*S. Pac. Terminal Co. v. Interstate Com. Comm'n*,
    219 U.S. 498 (1911).....................................................................................15

*United States v. Munsingwear, Inc.*,
    340 U.S. 36 (1950).......................................................................................16

*Worldwide Basketball & Sport Tours, Inc. v. NCAA*,
    388 F.3d 955 (6th Cir. 2004) .........................................................................7

## Other Authorities

Exec. Order No. 14322, 90 Fed. Reg. 35821 (July 24, 2025)...........................4, 9

## **INTRODUCTION**

The Court directed the parties to address: (1) whether the settlement of *In re College Athlete NIL Litigation*, No. 20-CV-03919 CW (N.D. Cal.) (*House* Settlement) affects the antitrust analysis of the NCAA's eligibility rules; and (2) if the NCAA's decision to grant Appellee, and similarly situated student-athletes, "a one-time waiver for the 2025-26 academic year" renders this appeal moot. Letter to Counsel, Dkt. No. 37. The answer to both questions is no.

*First,* the *House* Settlement only strengthens the case for reversal. It expressly reaffirms the commitment of the NCAA, its conferences, and its member institutions to the Five-Year Rule, which has been upheld by *every appellate court* to address it, even after the Supreme Court's decision in *NCAA v. Alston*, 594 U.S. 69 (2021). For good reason: ensuring that student-athletes' eligibility to participate in college sports generally matches the time required to complete a four-year educational degree "prevents intercollegiate athletics from becoming an indefinite detour from—rather than a complement to—education." Br. Amicus Curiae of American Council on Education *et al.* (ACE Br.) 5, Dkt. No. 21. That limitation also guarantees that new student-athletes receive the opportunity to obtain the life-changing benefits—both monetary and otherwise—of participating in intercollegiate athletics. These are among the core reasons why the Five-Year Rule is not a "commercial" rule subject to the Sherman Act, or at least why it easily passes scrutiny under the rule of reason.

That student-athletes can now obtain significant new benefits from their schools does not make the Five-Year Rule any more commercial, or any more suspect under the antitrust laws, than before. As courts have recently recognized in subsequent challenges to the Five-Year Rule, unlike rules regulating the type or amount of compensation student-athletes can earn, "an economic exchange is [not] at the heart of the rule." *See Giles v. NCAA*, No. 8:25-CV-01488, slip op. at 10–14 (C.D. Cal. Aug. 18, 2025) (concluding that the Five-Year Rule is non-commercial, and alternatively, satisfies the rule of reason). *Alston* does not change the fact that "[t]he eligibility question is not tethered to the question of compensation or commercial transaction." *Id.* at 11; *see also Johnson v. NCAA*, No. CV 25-60, 2025 WL 1790345, at *10 (D. Mont. June 26, 2025) (same). These post-*Alston* decisions are of a piece with this Court's pre-*Alston* precedents and confirm there is no sound basis for this panel to overrule those binding decisions.

At minimum, the *House* Settlement strengthens the validity of the Five-Year Rule under the rule of reason. As the Seventh Circuit recently recognized in a post-*House* Settlement decision, the fact that a single student-athlete cannot compete due to eligibility rules does not amount to showing that the rule has anticompetitive effects in a relevant market. *Fourqurean v. NCAA*, 143 F.4th 859, 870 (7th Cir. 2025). *Fourqurean* also underscores the importance of sound economic analysis in antitrust cases, *id.* at 870–71, which was wholly absent here, *see* Appellant's

Opening Br. 35–42, Dkt. No. 15.

If the Court reaches the issue, the *House* Settlement also confirms the strength of the NCAA's position under the second step of the rule of reason. In approving the settlement, Judge Wilken found that the NCAA had proffered valid procompetitive benefits for the settlement, including "ensur[ing] the greatest output of athletic opportunity" by preserving a broad base of opportunity for student-athletes to compete. *In re College Athlete NIL Litig.*, No. 20-CV-03919, 2025 WL 1675820, at *25 (N.D. Cal. June 6, 2025). Building off that recognition, the United States Department of Justice recently submitted an amicus brief in another eligibility challenge adjudicated in this circuit stating that "[i]t takes no great leap of logic" to understand the procompetitive rationales for the Five-Year Rule. Statement of Interest of the United States of America (USA *Zeigler* Amicus) at 9, *Zeigler v. NCAA*, No. 3:25-cv-00226 (E.D. Tenn. June 3, 2025), Dkt. No. 28. And the judge who issued the decision below has since upheld the Five-Year Rule, in a decision that actually applies the rule of reason and acknowledges the NCAA's procompetitive rationales. *See Boyd v. NCAA*, No. 3:25-cv-00729, 2025 WL 2432200, at *5, *7 (M.D. Tenn. Aug. 22, 2025).

*Second*, this case is not moot. The Court is correct that the NCAA has given Appellee (and, for reasons of equity, similarly-situated student-athletes) a limited waiver for the 2025-26 Academic Year, and the NCAA will not revoke the waiver

even if the Court reverses the district court's grant of the preliminary injunction. But throughout this litigation, Appellee has kept open the option of pursuing additional years of Division I eligibility beyond the upcoming season. That would follow the logic of his position, which is that his two years in junior college should not count towards his eligibility at all.

Moreover, an expedited resolution of the issues in this appeal remains necessary. The decision below was the first to call the NCAA's longstanding eligibility rules into question and incited a wave of similar lawsuits in courts across the country. *See* Addendum: Related Cases and Dispositions. These cases are often brought in an emergency posture and seek relief that is limited in duration (typically, the ability to participate in one additional season of competition)—circumstances that operate to confound ordinary appellate review and make this case "capable of repetition, yet evading review." *Lawrence v. Blackwell*, 430 F.3d 368, 371 (6th Cir. 2005), *cert. denied*, 547 U.S. 1178 (2006). While the NCAA has won the vast majority of these suits, this seemingly endless wave of litigation is profoundly destabilizing for college sports, as the current Administration recently reaffirmed. *See* Exec. Order No. 14322, 90 Fed. Reg. 35821 (July 24, 2025).[1] Whether or not the plaintiffs claim they are seeking limited relief, the logic of their positions would

---

[1] The Executive Order is titled "Saving College Sports" and is available at https://www.whitehouse.gov/presidential-actions/2025/07/saving-college-sports.

undermine virtually every eligibility rule, erasing any distinction between college and professional sports. This situation requires prompt appellate intervention.

## **ARGUMENT**

### I. **THE HOUSE SETTLEMENT DOES NOT UNDERMINE THE VALIDITY OF THE FIVE-YEAR RULE.**

While it does open the door to groundbreaking new benefits for student-athletes, the *House* Settlement is not "a major new market reality" with respect to the validity of the Five-Year Rule. Letter to Counsel, Dkt. No. 37. The settlement expressly reaffirms the core rationale for the rule—aligning student-athletes' eligibility to play college sports (four years) with the rough amount of time it takes to obtain a college degree (four to five years). ACE Br. 5. That time frame applies equally well to student-athletes, like Appellee here, who choose to begin their college education at a two-year college. (*See* R.1, Compl., PID#511–13) (Appellee completed his undergraduate degree in five years).

Specifically, the *House* Settlement expressly allows the NCAA to "adopt or affirm" rules "governing the number of seasons/length of time student-athletes are eligible to receive benefits, including scholarships and payments, pursuant to this Injunctive Relief Settlement, including any rule *capping the number of years a student-athlete may receive payments at four years*, and providing that all four of those years must be *played within a consecutive five-year period*." Second Am. Inj. Relief Settlement Art. 4, § 3(a), *In re College Athlete NIL Litig.*, No. 20-CV-03919

5

(N.D. Cal. June 6, 2025), Dkt. No. 980-2 (emphasis added). And indeed, immediately prior to the final approval hearing, the NCAA clearly stated its intent to "ensure a student-athlete's eligibility to receive benefits, pursuant to the Injunctive Relief Settlement, shall be consistent with NCAA Bylaw 12.8.1, as may be further modified in the future."[2] Together, these provisions—which were among those approved by the *House* court—reaffirm the commitment of the NCAA, its Division I conferences, and its Division I member institutions to the Five-Year Rule.

That the Five-Year Rule was incorporated in the *House* Settlement should come as no surprise. Rules defining and delimiting eligibility have long been a part of college sports. They protect college sports' central defining feature—that they are played by college students pursuing a college degree. For this reason, the Five-Year Rule is not commercial—it concerns eligibility, not the terms of any economic exchange involving student-athletes. It also easily satisfies the rule of reason. As explained further below, this Court should not be the first appellate court in history to call the Five-Year Rule into question and upend college sports.

### A. The Five-Year Rule Remains Non-Commercial and Outside the Purview of the Sherman Act.

The logic of this Court's decision in *Bassett v. NCAA*, 528 F.3d 426, 433 (6th

---

[2] *Proposed Division I Rule Changes Involving Student-Athlete NIL Activities*, "Implementation of House v. NCAA Settlement – Other Proposed Changes," NCAA (Apr. 6, 2025), https://www.ncaa.org/sports/2025/4/6/proposed-rule-changes-contingent-on-house-settlement-final-approval.aspx.

Cir. 2008) remains sound after the *House* Settlement. As this Court held in *Worldwide Basketball & Sport Tours, Inc. v. NCAA*, 388 F.3d 955 (6th Cir. 2004), *cert. denied*, 546 U.S. 813 (2005), "[t]he dispositive inquiry . . . is whether the rule itself is commercial, not whether the entity promulgating the rule is commercial." *Id*. at 959. Here, regardless whether the NCAA is viewed as a commercial entity in light of the contemporary realities of college sports, the rules at issue—which affect only who is eligible to participate in college sports—are not commercial.

Appellee has offered only two reasons why this Court should take the drastic step of overruling these precedents—first, that student-athletes now can obtain third-party NIL contracts and receive additional benefits directly from schools; and second, *Alston*. *See* Appellee Br. 15–17, Dkt. No. 27; *Pavia v. NCAA*, 760 F. Supp. 3d 527, 537 (M.D. Tenn. 2024). But that student-athletes now have access to new forms of compensation and benefits is a distinction in degree, not kind. Even before the *House* Settlement was announced, the Five-Year Rule limited eligibility for valuable benefits related to athletic participation, including an athletic scholarship potentially worth hundreds of thousands of dollars. Even so, every circuit court to address the rule has upheld it against challenge. *See* Appellant's Opening Br. 27–29; *see also Fourqurean*, 143 F.4th at 871.

Moreover, as several district courts have recently confirmed, *Alston* did not

change the commercial/non-commercial analysis either.[3] *See Johnson*, 2025 WL 1790345, at \*8–10; *Giles*, slip op. at 8–10. *Alston* expressly reaffirmed and built on the Ninth Circuit's decision in *O'Bannon v. NCAA*, 802 F.3d 1049 (9th Cir. 2015). And as the *Giles* court aptly put it, *O'Bannon* reaffirmed that "only compensation rules regulate commercial activity and are subject to the antitrust laws. True eligibility rules, contrarily, do not regulate commercial activity." *Giles*, slip op. at 9 (citing *O'Bannon*, 802 F.3d at 1065–66). Following that logic, the *Giles* court concluded "that the Five-Year Rule is not subject to antitrust scrutiny because it is likely a 'true' eligibility rule." *Id.* at 10. "[T]he rule itself is simple: it caps the number of years that student athletes can participate in college sports. This is distinguishable from rules limiting NILs or education-related compensation, where an economic exchange is at the heart of the rule." *Id.*; *see also id.* at 11 ("The eligibility question is not tethered to the question of compensation or commercial transaction."); *Johnson*, 2025 WL 1790345, at \*10 ("This Court reads *Alston* the same way that *Goldstein*, *Brzovic*, *Coley*, and *Osuna* do. As *O'Bannon* instructs, the Challenged Rules are true eligibility rules and nothing in *Alston* changes that.").

These decisions make good sense. The basic logic of Appellee's position,

---

[3] If the *House* Settlement is instead viewed as "a major new market reality," Letter to Counsel, Dkt. No. 37, reversal would still be warranted. *Alston* requires an assessment of the current conditions in a market, 594 U.S. at 93, and here, Appellee provided no such analysis, *see* Appellant's Opening Br. 35–37.

which was accepted in the decision below, is that any rule that might have implications for someone's eligibility to engage in an activity that might create opportunities for them to participate in a commercial transaction is by definition a commercial rule subject to the Sherman Act. But that would expose to antitrust scrutiny every eligibility rule—including rules prescribing a minimum GPA to participate in college sports, requiring college athletes to have graduated from high school, or imposing credit-hour requirements. *See* ACE Br. 6. That would also upend any distinction between college and professional sports, and call into question the ability to have or enforce any rules at all. *See, e.g.*, Exec. Order No. 14322 § 1, 90 Fed. Reg. 35821 (July 24, 2025) (noting that "the inability to maintain reasonable rules and guardrails is a mortal threat to most college sports"). And the fact that the NCAA would have a good defense for such rules under the rule of reason is no solution. That is true in this case as well, but still there are dozens of lawsuits flooding the courts, resulting in a patchwork of outcomes and uncertainty about what the rules actually are. None of this makes sense—even Justice Kavanaugh, whose *Alston* concurrence was generally supportive of antitrust challenges to NCAA rules, reaffirmed that eligibility rules raise no antitrust concerns. *See Alston*, 594 U.S. at 110 (Kavanaugh, J., concurring) ("Everyone agrees that the NCAA can require student athletes to be enrolled students in good standing.").

**B. The Five-Year Rule Has No Anticompetitive Effects and Is Justified by Recognized Procompetitive Rationales.**

If the Court reaches the issue, the *House* Settlement operates only to strengthen the NCAA's position on the assessment of competitive effects.

To start, the Seventh Circuit's recent decision in *Fourqurean*, issued after approval of the *House* Settlement, underscores the flaws in the district court's analysis of anticompetitive effects. Similar to here, the Seventh Circuit reviewed a preliminary injunction entered after limited briefing and argument. There, the student-athlete claimed that the Five-Year Rule violated the antitrust laws insofar as the NCAA counted years in Division II towards the student-athlete's eligibility. 143 F.4th at 864–65. Even in the atmosphere of increased benefits permitted by the *House* Settlement, the Seventh Circuit reversed, concluding that Fourqurean needed to show "that the Five-Year Rule creates, protects, or enhances the NCAA's dominant position in the market—and thus the NCAA's ability to depress student-athlete compensation below the competitive level." *Id.* at 870. But instead, he had shown only "his own exclusion from participating in college football." *Id.* at 870–71. Moreover, Fourqurean's theory of harm made no sense, because "[u]nder ordinary principles of supply and demand, a restraint that limits the supply of workers in a labor market would increase, not decrease, worker compensation." *Id.*

at 871. All those points ring equally true here, compelling a similar result.[4]

That should end the case, but it is also apparent that the NCAA's procompetitive rationales remain valid even after approval of the *House* Settlement. First, as noted above, the *House* final approval decision endorsed certain procompetitive effects to the overall settlement structure, which includes reaffirmation of the Five-Year Rule. *See supra* Part I at 5–6. The rationales for the Five-Year Rule—including distinguishing college from professional sports, linking a student-athlete's eligibility to academic progress, and ensuring that student-athletes move on once they have completed their degrees and make way for new student-athletes—remain valid post-*House*. *See Johnson*, 2025 WL 1790345, at *14 ("While the availability of NIL compensation has without question changed the landscape of college athletics, those changes do not mean that there is no procompetitive rationale for the NCAA's eligibility rules."); USA *Zeigler* Amicus at 5 ("Maintaining an academic connection and a degree path can help improve the quality of experience for student-athletes and 'integrate athletics with academics,'"

---

[4] The district court here found that Pavia had established anticompetitive effects based largely on the reply expert report submitted by his expert, Dr. Maxcy. *See Pavia*, 760 F. Supp. 3d at 539–40. But the same judge recently concluded that it is improper for a plaintiff to establish its burden of proof at step one of the rule of reason with evidence submitted on reply, in a case involving the very same tactics by the same expert opining on the same rules. *Boyd*, 2025 WL 2432200, at *1. Under the logic of that more recent ruling, the district court here should never have reached the second step of the rule of reason, in which the NCAA must proffer procompetitive rationales.

thus "leading to potential procompetitive benefits in the student-athlete labor market." (quoting *McCormack v. NCAA*, 845 F.2d 1338, 1345 (5th Cir. 1988))); *id.* at 9 ("It takes no great leap of logic to see how rules tying eligibility to education-related requirements" could "preserve the unique nature of [the NCAA's] product.").

If anything, the recent wave of litigation confirms the validity of those rationales. To date, no student-athlete suing over the Five-Year Rule has been able to articulate a principled stopping point as to how long student-athletes should be able to compete if their arguments were accepted. Some have argued for two or even three additional seasons (because junior college should not count), or four additional seasons (because Division II eligibility should not count), but under the logic of their positions, eligibility could last even longer if a student-athlete attended both types of institutions. Similarly, any change to the rules would solve nothing, because any limit on eligibility would be subject to the exact same arguments here. It is impossible to understand how allowing a student-athlete, in the ordinary course, to obtain a sixth or eighth or even tenth year of eligibility serves any of the NCAA's recognized procompetitive rationales. This case illustrates the point, with Appellee seeking to compete for a sixth or perhaps even seventh year after he already completed his undergraduate degree and without his ever specifying what additional degrees, if any, he intends to pursue. Appellant's Opening Br. 11.

Judge Campbell's recent opinion in *Boyd* helps confirm the point. There,

12

Judge Campbell departed from the decision on review here, and endorsed the NCAA's procompetitive rationales of enhancing output by creating opportunities for "high school senior student-athletes," preserving college sports "as a product different from professional athletics," and fostering "better alignment between Division I athletics and academics." 2025 WL 2432200, at *7. At least as applied to "students attending NAIA colleges," the Court concluded that all these rationales were valid and that it was appropriate to count years of competition at NAIA schools against the Division I eligibility clock. *Id.* at *8. The NCAA respectfully submits that there is no meaningful distinction between two-year junior colleges and four-year NAIA institutions for these purposes, in that both provide alternative paths toward a four-year degree. To the extent the opinions differ, the most logical explanation is Judge Campbell actually applied the full rule of reason in *Boyd*, rather than the Quick Look he used in *Pavia*. *See* Appellant's Opening Br. 15–16, 32–34.

## II.    THIS APPEAL IS NOT MOOT.

Even though the NCAA intends to honor the waiver it has granted regardless the specific disposition of this appeal, this case is not moot for two related reasons.

First, Appellee has left the door open, throughout this litigation, to seeking still more years of eligibility. That was his stated reason for not dismissing the complaint after the district court granted his motion for preliminary injunction, and the NCAA subsequently granted him a waiver for the current academic year. And it

was consistent with the relief he sought in his complaint, which included "an order enjoining Defendant from enforcing the JUCO Eligibility Limitation Bylaws as to [him] pending entry by the Court of a final judgment in this action." (R.10-1, Mem. ISO TRO & PI Mot., PID#590.) Because his motion for a preliminary injunction was granted, he can presumably argue to the district court that its ruling bars the NCAA from enforcing the Five-Year Rule against him next year—consistent with the logic of his position that his two years in junior college should not be counted at all. *See* Appellee Br. 23–24 (Appellee "proposed amending the NCAA definition of 'intercollegiate competition' to specify that such competition must take place at an 'NCAA member institution' to count against the athlete's four years of eligibility").

In any event, the case is not moot because the issues presented fall within the "capable of repetition, yet evading review" exception to the mootness doctrine. *E.g.*, *Lawrence*, 430 F.3d at 371. Under that exception, a court may hear a case that is technically moot "when 'the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and there was a reasonable expectation that the same complaining party would be subjected to the same action again.'" *Bonnell v. Lorenzo*, 241 F.3d 800, 808 n.4 (6th Cir. 2001) (quoting *Gannett Co. v. DePasquale*, 443 U.S. 368, 377 (1979)), *cert. denied*, 534 U.S. 951 (2001).

Those factors are satisfied here. To say there is a "reasonable expectation" that the NCAA will face similar challenges would be a gross understatement. *See*

14

Addendum: Related Cases and Dispositions. The posture of these cases almost always involves a student-athlete plaintiff seeking an additional season of eligibility on an emergency basis—sometimes days before the season begins (*Osuna-Sanchez*), hours before a postseason tournament (*Burroway*), or more recently, after the first game (*Mayes*). *See id*. When those plaintiffs lose, they have largely declined to appeal (though notably, two district court cases in the Sixth Circuit are stayed pending the resolution of this appeal after decisions in the NCAA's favor[5]). If the student-athlete wins, however, the ordinary appellate process is unlikely to permit the NCAA to obtain appellate review. Given the short length of college athletics seasons and the typical timeline of appellate review, the case may well become moot before the appellate court is able to rule. *See, e.g.*, *Kerr for Kerr v. Comm'r of Soc. Sec.*, 874 F.3d 926, 932–33 (6th Cir. 2017) (a "three-month period" was "far too short in duration to be fully litigated" such that the challenged action was "evading review"). The important legal questions here could thus escape review indefinitely.

The "capable of repetition" exception to mootness exists precisely to prevent that result. *See Nader v. Volpe*, 475 F.2d 916, 917 (D.C. Cir. 1973) ("Consideration of important legal issues 'ought not to be, as they might be, defeated by . . . orders, capable of repetition, yet evading review.'" (quoting *S. Pac. Terminal Co. v.*

---

[5] *See* Order, *Osuna Sanchez v. NCAA*, No. 3:25-CV-62 (E.D. Tenn. May 21, 2025), Dkt. No. 46; Order Staying Action, *Zeigler v. NCAA*, No. 3:25-cv-00226 (E.D. Tenn. Sep. 2, 2025), Dkt. No. 47.

*Interstate Com. Comm'n*, 219 U.S. 498, 515 (1911))); *see also Fialka-Feldman v. Oakland Univ. Bd. of Trs.*, 639 F.3d 711, 715 (6th Cir. 2011) (noting that federal courts "have on occasion invoked the public interest in deciding whether to apply the 'capable of repetition' exception to mootness").[6]

Finally, expedited consideration of the appeal remains appropriate in light of the untenable litigation environment surrounding the Five-Year Rule. While the NCAA has won the vast majority of challenges to the rule, they show no signs of slowing down. And, as just noted, changing the rules would not solve the problem either, because there is every reason to think that student-athletes would sue for a sixth season of competition if given a fifth, and so on. Appellate clarity is needed to restore order and to confirm that college sports are played by college athletes.[7]

## CONCLUSION

For the reasons set forth above and in prior briefing, the NCAA respectfully requests that this Court reverse the preliminary injunction issued by the district court.

---

[6] Moreover, even if the "capable of repetition" exception applies only to disputes involving the *same* private parties, *see Chirco v. Gateway Oaks, L.L.C.*, 384 F.3d 307, 309–10 (6th Cir. 2004), it would be satisfied here given Appellee's own refusal to rule out seeking an additional season of competition.

[7] If the Court disagrees with this analysis and determines that the case is moot, the appropriate course would be to vacate the judgment below. *See, e.g.*, *Brown v. Yost*, 122 F.4th 597, 603 (6th Cir. 2024) (en banc) (per curiam) ("Because [the plaintiff] did not have an opportunity to obtain appellate review of the district court's decision denying her request for preliminary relief, we vacate that decision." (citing *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39–41 (1950))).

Dated: September 5, 2025

By: */s/ Taylor J. Askew*
Taylor J. Askew
David J. Zeitlin
Holland & Knight LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
(615) 244-6380
taylor.askew@hklaw.com
david.zeitlin@hklaw.com

Respectfully submitted,

By: */s/ Rakesh Kilaru*
Rakesh Kilaru (Counsel of Record)
Daniel Epps
Wilkinson Stekloff LLP
2001 M Street N.W., 10th Floor
Washington, DC  20036
(202) 847-4000
rkilaru@wilkinsonstekloff.com
depps@wilkinsonstekloff.com

*Counsel for Defendant-Appellant*
*National Collegiate Athletic Association*

## <u>CERTIFICATION OF COMPLIANCE</u>

I hereby certify:

1.      This brief complies with the August 21, 2025 Letter to Counsel requesting supplemental briefs because it is double spaced and does not exceed **20 pages**, exclusive of items covered under Fed. R. App. R. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point font.

Dated: September 5, 2025                          /s/ Rakesh Kilaru
                                                 RAKESH KILARU

## <u>CERTIFICATE OF SERVICE</u>

I, Rakesh Kilaru, counsel for appellant and a member of the Bar of this Court, certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system on September 5, 2025. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: September 5, 2025     /s/ Rakesh Kilaru
             RAKESH KILARU

## ADDENDUM: RELATED CASES AND DISPOSITIONS[8]

| Date of Ruling | Case Name | Court | Citation or Case Number | Disposition |
|---|---|---|---|---|
| Dec. 18, 2024 | *Pavia v. NCAA* | M.D. Tenn. | 760 F. Supp. 3d 527 | PI granted; appeal pending |
| Dec. 23, 2024 | *Wade v. NCAA* | S.D. Miss. | 2024 WL 5212665 | TRO denied |
| Feb. 6, 2025 — July 16, 2025 | *Fourqurean v. NCAA* | W.D. Wis. | 771 F. Supp. 3d 1043 (W.D. Wisc.) — 2025 WL 1944005 (7th Cir.) | PI granted; 7th Cir. reversed; PI refiled |
| Feb. 7, 2025 | *Ciulla-Hall v. NCAA* | D. Mass. | 2025 WL 438707 | TRO denied |
| Feb. 21, 2025 | *Arbolida v. NCAA* | D. Kan. | 2025 WL 579830 | TRO denied |
| Feb. 28, 2025 | *Goldstein v. NCAA* | M.D. Ga. | 2025 WL 662809 | PI denied |
| Mar. 3, 2025 | *Osuna-Sanchez v. NCAA* | E.D. Tenn. | 2025 WL 684271 | PI denied; stayed pending *Pavia* |
| Apr. 24, 2025 | *Smith v. NCAA* | N.C. Super. Ct. | 25CV003480-310 | PI denied |
| Apr. 24, 2025 | *Jones v. NCAA* | N.C. Super. Ct. | 25CV003492-310 | PI denied |

---

[8] Where courts issued separate orders on a plaintiff's motion for temporary restraining order and motion for preliminary injunction, only the date and citation for the preliminary injunction order are noted. Where courts issued multiple orders on requests for preliminary injunction, the information in the table concerns the most recent district court order.

| Date of Ruling | Case Name | Court | Citation or Case Number | Disposition |
|---|---|---|---|---|
| Apr. 25, 2025 | *Elad v. NCAA* | D.N.J. | 2025 WL 1202014 | PI granted; appeal pending |
| May 11, 2025 | *Brzovic v. NCAA* | D.S.C. | 2025 WL 1370758 | PI denied |
| May 15, 2025 | *Burroway v. NCAA* | La. Tenth Jud. Dist. Ct. | 95588 A | *Ex parte* TRO granted; voluntarily dismissed before PI hearing |
| June 6, 2025 | *Coley v. NCAA* | E.D.N.C. | 2025 WL 1616719 | PI denied |
| June 12, 2025 | *Zeigler v. NCAA* | E.D. Tenn. | 2025 WL 1671952 | PI denied; stayed pending *Pavia* appeal |
| June 25, 2025 | *Robinson v. NCAA* | D.N.J. | 3:25-cv-07661-ZNQ-TJB (Dkt. No. 15) | Voluntarily dismissed for lack of personal jurisdiction; refiled in C.D. Cal. |
| June 26, 2025 | *Johnson v. NCAA* | D. Mont. | 2025 WL 1790345 | PI denied |
| July 1, 2025 | *Walker v. NCAA* | M.D. La. | 2025 WL 1901907 | PI denied; motion to dismiss pending |
| July 18, 2025 | *Braham v. NCAA* | D. Nev. | 2025 WL 2017162 | PI granted; appeal pending |
| July 24, 2025 | *Hill v. NCAA* | E.D. Ark. | 4:25-cv-00591-LPR (Dkt. No. 31) | PI denied |

| Date of Ruling | Case Name | Court | Citation or Case Number | Disposition |
|---|---|---|---|---|
| July 24, 2025 | *Hasz v. NCAA* | D. Neb. | 2025 WL 2083853 | PI denied; stayed pending *Elad* appeal |
| Aug. 7, 2025 | *Bellamy v. NCAA* | M.D. Tenn. | 2025 WL 2267761 | PI denied |
| Filed Aug. 11, 2025 | *Moore v. NCAA* | Tex. Dist. Ct., Dallas Cnty. | TC25-104172502 | TRO granted & extended; PI hearing set for 9/10/2025 |
| Aug. 13, 2025 | *Bustard v. NCAA* | Mich. Cir. Ct. | 25-000779-CP | PI granted; motion for reconsideration pending |
| Aug. 18, 2025 | *Giles v. NCAA* | C.D. Cal. | 8:25-cv-01488-JVS-KES (Dkt. No. 26) | PI denied; re-filed; denied |
| Aug. 18, 2025 | *Robinson v. NCAA* | C.D. Cal. | No. 2:25-cv-06454-JVS-KES (Dkt. No. 29) | PI denied |
| Aug. 18, 2025 | *Wingfield v. NCAA* | C.D. Cal. | 2:25-cv-06875-JVS-KES (Dkt. No. 26) | PI denied |
| Aug. 20, 2025 | *Robinson v. NCAA* | N.D. W. Va. | 2025 WL 2409203 | PI granted; appeal pending |
| Aug. 20, 2025 | *Martinson v. NCAA* | D. Nev. | 2:25-cv-01376-RFB-DJA (Dkt. No. 26) | PI granted; district court proceedings stayed pending forthcoming appeal |

| Date of Ruling | Case Name | Court | Citation or Case Number | Disposition |
|---|---|---|---|---|
| Aug. 22, 2025 | *Boyd v. NCAA* | M.D. Tenn. | 2025 WL 2432200 | PI denied; motion for reconsideration pending |
| Aug. 28, 2025 | *Hamilton v. NCAA* | E.D. La. | 2025 WL 2481363 | TRO denied; reconsideration denied; TRO/PI refiled and denied |
| Aug. 29, 2025 | *Larry v. NCAA* | D. Colo. | 1:25-cv-01761-GPG-CYC (Dkt. No. 49) | PI denied |
| Filed Sep. 2, 2025 | *Patterson v. NCAA* | M.D. Tenn. | 3:25-cv-00994 | Class Action Complaint Seeking Injunctive Relief |
| Sep. 5, 2025 | *Mayes v. NCAA* | N.C. Super. Ct. | 25CV045874-590 | TRO denied |
| Sep. 4, 2025 | *Hill v. NCAA* | Ark. Pulaski Cnty. Cir. Ct. | 50CV-25-8534 | Voluntarily dismissed prior to ruling on TRO or PI |

**ADDENDUM: DESIGNATION OF RELEVANT RECORD DOCUMENTS**

| District Court Dkt. | Description | Page ID # |
|---|---|---|
| R.1 | Complaint for Injunctive Relief | 511–513 |
| R.10-1 | Memo In Support of Motion for Temporary Restraining Order and Preliminary Injunction | 590 |

## **ADDENDUM: UNPUBLISHED DISPOSITIONS CITED IN BRIEF**

*Giles v. NCAA*, No. 8:25-CV-01488, slip op. at 1–17 (C.D. Cal. Aug. 18, 2025).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:25-cv-01488-JVS-KES | Date | August 18, 2025 |
|---|---|---|---|
| | 2:25-cv-06454-JVS-KES | | |
| | 2:25-cv-06875-JVS-KES | | |

Title      Jagger Giles v. National Collegiate Athletic Association,
           Kaedin Robinson v. National Collegiate Athletic Association,
           DaJuanye Wingfield v. National Collegiate Athletic Association NCAA

Present: The Honorable   **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

Proceedings:   **[IN CHAMBERS] Order Regarding Preliminary Injunction**

Before the Court are three related cases. Jagger Giles ("Giles") filed a motion for a preliminary injunction. (Giles Mot. Dkt. No. 16, Case No. 8:25-cv-01488-JVS-KES.) The Court then issued an order to show cause why a preliminary injunction should not issue in Robinson (Order, Dkt. No. 19, Case No. 2:25-cv-06454-JVS-KES) and Wingfield (Order, Dkt. No. 14, Case No. 2:25-cv-06875-JVS-KES).

Defendant National Collegiate Athletic Association ("NCAA") filed an omnibus opposition as ordered by this Court. (Opp'n, Dkt. No. 23, Case No. 2:25-cv-06454-JVS-KES.)

Giles replied. (Giles Reply, Dkt. No. 26.) Robinson filed a response to the opposition. (Robinson Response, Dkt. No. 27.) Wingfield also filed a response. (Wingfield Response, Dkt. No. 24.)

For the following reasons, the Court **DENIES** the preliminary injunction. (Giles, Dkt. No. 16; Robinson, Dkt. No. 19; Wingfield, Dkt. No. 14.)

## I. BACKGROUND

The following facts are taken from Giles, Robsinson, and Wingfield's (collectively, "Plaintiffs") respective complaints, application for a temporary restraining

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:25-cv-01488-JVS-KES<br>2:25-cv-06454-JVS-KES<br>2:25-cv-06875-JVS-KES | Date | August 18, 2025 |
|---|---|---|---|

| Title | <u>Jagger Giles v. National Collegiate Athletic Association</u>,<br><u>Kaedin Robinson v. National Collegiate Athletic Association</u>,<br><u>DaJuanye Wingfield v. National Collegiate Athletic Association NCAA</u> |
|---|---|

order ("TRO") and order to show cause ("OSC") why a permanent injunction should not issue. (<u>See, e.g.</u>, Giles Mot.; Robinson TRO, Dkt. No. 13-4.)

A. *NCAA Eligibility Policy*

The NCAA is a voluntary, self-governing association of approximately 1,100 four-year member schools throughout the United States that administers athletic competition for student-athletes. (Giles Mot. at 2.)

The NCAA promulgates its own rules. (NCAA, Division I 2024-2025 Manual ("Bylaws"), www.ncaapublications.com/productdownloads/D125.pdf.) Of relevance to these actions are the Five-Year Rule, which gives a student five years to participate in four seasons of intercollegiate competition in any one sport. Bylaws, 12.8. The Bylaws state in relevant part:

> **12.8.1 Five-Year Rule.** A student-athlete shall complete the student-athlete's seasons of participation within five calendar years from the beginning of the semester or quarter in which the student-athlete first registered for a minimum full-time program of studies in a collegiate institution, with time spent in the armed services, on official religious missions or with recognized foreign aid services of the U.S. government being excepted. For international students, service in the armed forces or on an official religious mission of the student's home country is considered equivalent to such service in the United States.

> **12.8.1.1 Determining the Start of the Five-Year Period.** For purposes of starting the count of time under the five-year-rule, a student-athlete shall be considered registered at a collegiate institution (domestic or foreign; see Bylaw 14.02.4) when the student-athlete initially registers in a regular term (semester or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:25-cv-01488-JVS-KES<br>2:25-cv-06454-JVS-KES<br>2:25-cv-06875-JVS-KES | Date | August 18, 2025 |
|---|---|---|---|

| Title | Jagger Giles v. National Collegiate Athletic Association,<br>Kaedin Robinson v. National Collegiate Athletic Association,<br>DaJuanye Wingfield v. National Collegiate Athletic Association NCAA |
|---|---|

> quarter) of an academic year for a minimum full-time program of studies, as determined by the institution, and attends the student's first day of classes for that term (see Bylaw 12.8.2).

Under the Bylaws, a collegiate institution includes an institution of higher education that

> (a) [i]s accredited at the college level by an agency or association recognized by the secretary of the Department of Education and legally authorized to offer at least a one-year program of study creditable toward a degree;
> (b) [c]onducts an intercollegiate athletics program, even though the institution is not accredited at the college level and authorized to offer at least a one-year program of study creditable toward a degree; or
> (c) [i]s located in a foreign country.

Bylaws, 14.02.4. Thus, although junior colleges (or "JUCO") are not NCAA member schools and consequently cannot be a Division I ("DI") school, competing at JUCO counts towards one of the four years under the Five-Year Rule.[1] (Id. at 2–3.)

### B.     *Plaintiffs*

####     1.     Jagger Giles

Giles is a football linebacker. (Mot. at 5.) Discounting the COVID year, Giles competed in four seasons of football across five years. (Id.)

• 2019-2020: Giles enrolled at California State University San Marcos.

---

[1] What the Court refers to as the "Five-Year Rule" encapsulates what Plaintiffs refer to as the "JUCO rule."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:25-cv-01488-JVS-KES<br>2:25-cv-06454-JVS-KES<br>2:25-cv-06875-JVS-KES | Date | August 18, 2025 |

| | |
|---|---|
| Title | <u>Jagger Giles v. National Collegiate Athletic Association</u>,<br><u>Kaedin Robinson v. National Collegiate Athletic Association</u>,<br><u>DaJuanye Wingfield v. National Collegiate Athletic Association NCAA</u> |

Although he did not participate in any athletics, it started the clock on the Five-Year Rule under Bylaw 12.8.1.1.

- 2020-2021: NCAA provided a waiver of the Five-Year Rule for COVID
- 2021-2022: Completed one season at Grossmont Junior College
- 2022-2023: Completed season two at Grossmont Junior College
- 2023-2024: Completed season three at Idaho State University
- 2024-2025: Completed season four at Idaho State University

(<u>Id.</u>)  Giles argues that following the <u>Pavia</u> decision,[2] he believed he could play another season of DI football and transferred to USD.  (<u>Id.</u> at 6.)  After transferring, he negotiated a name, image, and likeness ("NIL") contract with several brands that would pay between $10,000 and $50,000.  (<u>Id.</u>)

However, USD refused to ask the NCAA to waive the Five-Year Rule for Giles. (<u>Id.</u> at 7.)  Instead, on July 11, 2025, Giles filed an ex parte application for a TRO and preliminary injunction enjoining the NCAA from enforcing the Five-Year Rule.  (Dkt. No. 9.)  After the Court denied the application (dkt. no. 13), Giles filed a motion for a preliminary injunction (Giles Mot.).  Giles argues that the NCAA should waive the years Giles played at Grossmont because it is a restraint on trade, decreasing NIL compensation to athletes who chose to further their academic career at a junior college. (Mot. at 11.)

2.     Kaedin Robinson

---

[2]In <u>Pavia v. Nat'l Collegiate Athletic Ass'n</u>, the court granted a preliminary injunction enjoining the Five-Year Rule.  60 F. Supp. 3d 527, 545 (M.D. Tenn. 2024).  Subsequently, the NCAA DI Board of Directors issued a blanket waiver ("Pavia waiver") for students "who attended and competed at a non-NCAA school for one or more years to remain eligible and compete in 2025-26 if those student-athletes would have otherwise used their final season of competition during the 2024-25 academic year, and meet all other eligibility requirements."  (Declaration of Eddie A. Jauregui, Dkt. No. 20, Ex.1.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:25-cv-01488-JVS-KES<br>2:25-cv-06454-JVS-KES<br>2:25-cv-06875-JVS-KES | Date | August 18, 2025 |

| Title | Jagger Giles v. National Collegiate Athletic Association,<br>Kaedin Robinson v. National Collegiate Athletic Association,<br>DaJuanye Wingfield v. National Collegiate Athletic Association NCAA |

Similarly, Robinson is a football player who completed four years in a span of five years, excluding the COVID year. (Robinson Mot., Dkt. No. 1 ¶¶ 25–35, Case No. 2:25-cv-06454-JVS-KES.)

- 2019-2020: Robinson enrolled at a junior college and completed his first season at ASA College
- 2020-2021: COVID waiver
- 2021-2022: Redshirted/ COVID extension
- 2022-2023: Completed season two at Appalachian State University
- 2023-2024: Completed season three at Appalachian State University
- 2024-2025: Completed season four at Appalachian State University

(Id.) At this time, Robinson believed "he no longer had any collegiate eligibility remaining." (Compl. ¶ 61.) Therefore, Robinson signed with an agent to represent him and entered his name in the 2025 NFL draft. The NCAA Bylaws prohibit an individual from signing professional representation agreements with agents ("No Agent") and terminate a student's amateur status if the student enters a professional league draft like the NFL draft ("No Draft"). (Bylaws, 12.3.1; 12.2.4.2.)[3]

However, after the Pavia decision, he also believed he was eligible for another year and transferred to UCLA to play for the Bruins, which offered him approximately $450,000 as part of his NIL contract. (Id. ¶¶ 36-37.) UCLA requested the NCAA to waive the Five-Year Rule under Pavia, but was denied. (Id. ¶¶ 38–39.) On July 18, 2025, Robinson filed for a TRO and an OSC for a preliminary injunction. (Robinson TRO, Dkt. No. 9.) The Court denied the TRO but granted the OSC. (Dkt. No. 19.)

3. Dajuanye Wingfield

---

[3]Even if the Court were to grant the preliminary, the NCAA could bar Robinson from competing under the no agent and draft provisions in its Bylaws.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:25-cv-01488-JVS-KES<br>2:25-cv-06454-JVS-KES<br>2:25-cv-06875-JVS-KES | Date | August 18, 2025 |

| | |
|---|---|
| Title | Jagger Giles v. National Collegiate Athletic Association,<br>Kaedin Robinson v. National Collegiate Athletic Association,<br>DaJuanye Wingfield v. National Collegiate Athletic Association NCAA |

Wingfield is another football player who has exhausted all four seasons over five years.

- 2019-2020: Completed season one at El Camino College, a junior college
- 2020-2021: COVID waiver
- 2021-2022: Completed season two at El Camino College
- 2022-2023: Redshirted
- 2023-2024: Completed season three at the University of New Mexico
- 2024-2025: Completed season four at Purdue University

(Declaration of Dajuanye Wingfield ("Wingfield Decl."), Dkt. No. 9-3 ¶ 4.) During the 2024-2025 season, Wingfield claims that he "took classes that didn't count toward [his] degree." (Id. ¶ 9.) However, as the NCAA notes, to be eligible to represent an institution, student-athletes must "maintain progress toward a baccalaureate or equivalent degree at that institution as determined by the regulations of that institution . . . ." Bylaws, 14.4.1.[4]

After learning of the Pavia waiver, he accepted USC's offer to play for the Trojans with a $210,000 NIL contract. (Compl. Dkt. No. 2 ¶¶ 36–37.) Similar to Robinson, Wingfield's request for a Pavia waiver was denied on March 26, 2025. (Id. ¶¶ 38–40.) Subsequently, he filed for a TRO on July 23, 2025. (Wingfield Dkt. No. 12.) The Court denied the TRO but granted his application for an OSC regarding a preliminary injunction. (Dkt. No. 19.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 65(a) governs the issuance of preliminary

---

[4]Similar to Robinson, even if the Court granted the preliminary injunction, the NCAA may revoke Wingfield's eligibility on other grounds. However, Wingfield argued during oral argument that the declaration was a misstatement and that Wingfield still may be working towards a degree, allowing him to be eligible if the Five-Year Rule is waived. (Aug. 18. 2025 Hr'g.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:25-cv-01488-JVS-KES<br>2:25-cv-06454-JVS-KES<br>2:25-cv-06875-JVS-KES | Date | August 18, 2025 |

| | |
|---|---|
| Title | Jagger Giles v. National Collegiate Athletic Association,<br>Kaedin Robinson v. National Collegiate Athletic Association,<br>DaJuanye Wingfield v. National Collegiate Athletic Association NCAA |

injunctions.  On an application for a preliminary injunction, the plaintiff has the burden
to establish that  (1) he is likely to succeed on the merits, (2) he is likely to suffer
irreparable harm if the preliminary relief is not granted, (3) the balance of equities favors
the plaintiff, and (4) the injunction is in the public interest.  Winter v. Nat. Res. Def.
Council, Inc., 555 U.S. 7, 20 (2008).  A preliminary injunction is an extraordinary
remedy never awarded as of right.  Id. (citation omitted).

In the Ninth Circuit, the Winter factors may be evaluated on a sliding scale:
"serious questions going to the merits, and a balance of hardships that tips sharply
toward the plaintiff can support issuance of a preliminary injunction, so long as the
plaintiff also shows that there is a likelihood of irreparable injury and that the injunction
is in the public interest."  Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127,
1134–35 (9th Cir. 2011).  To satisfy the irreparable injury element, a plaintiff must
"demonstrate that irreparable injury is likely in the absence of an injunction."  Winter,
555 U.S. at 22 (citations omitted).

The burden is even more demanding where the plaintiff seeks a mandatory
injunction rather than a prohibitory injunction preserving the status quo.  Because a
mandatory injunction "goes well beyond maintaining the status quo *pendente lite*[,]"
courts "should deny such relief "unless the facts and law clearly favor the moving party."
Stanley v. Univ. of S. California, 13 F.3d 1313, 1320 (9th Cir. 1994) (internal quotations
and citations omitted).

### III.  DISCUSSION

The Court now turns to the Winter factors.

*A.     Likelihood of Success on the Merits*

Likelihood of success on the merits is by far the most important factor for a
preliminary injunction.  Disney Enters., Inc. v. VidAngel, Inc., 869 F.3d 848, 856 (9th
Cir. 2017).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:25-cv-01488-JVS-KES<br>2:25-cv-06454-JVS-KES<br>2:25-cv-06875-JVS-KES | Date | August 18, 2025 |

Title  Jagger Giles v. National Collegiate Athletic Association,
Kaedin Robinson v. National Collegiate Athletic Association,
DaJuanye Wingfield v. National Collegiate Athletic Association NCAA

1.    Eligibility Rules and the Sherman Act

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations. . . ." 15 U.S.C. § 1. Courts have broadly interpreted "commerce" to include "most every activity from which the actor anticipates economic gain." Phillip Areeda & Herbert Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and Their Application ¶ 260b (5th ed. 2020). Accordingly, to bring a Sherman Act claim, the challenged act must implicate a commercial activity. The numerous antitrust cases regarding the NCAA and its rules echo this underlying principle.

In Nat'l Collegiate Athletic Ass'n v. Alston, the Supreme Court upheld a district court's permanent injunction of NCAA's rules limiting education-related compensation under the Sherman Act. 594 U.S. 69, 80–84 (2021). The rules at issue were commercial in nature because they limited the size of the grant-in-aid that schools were permitted to offer in exchange for their athletic services. In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig., 375 F. Supp. 3d 1058, 1063 (N.D. Cal. 2019), aff'd, Alston. The Supreme Court found that the NCAA was undoubtedly a commercial enterprise, but its decision concerned "only a narrow subset of the NCAA's compensation rules" and that future challenges to the NCAA rules would require a fact-specific assessment. 594 U.S. at 108 (Kavanaugh, J., concurring).

After Alston, the NCAA amended its rules to allow student athletes to receive non-education-related compensation in exchange for their name, image, and likeness. Pavia, 760 F. Supp. 3d at 537. Naturally, the Alston case opened the door for NIL compensation. Concurrently, a slew of student athletes across the nation sought injunctive relief from the Five-Year Rule under the Sherman Act under the theory that the NCAA eligibility rule affects their access to NIL compensation, which is commercial in nature. A majority of district courts, however, declined to find the NCAA's Five-Year Rule as commercial. See, e.g., Gaines v. National Collegiate Athletic Ass'n, 746 F.Supp.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:25-cv-01488-JVS-KES<br>2:25-cv-06454-JVS-KES<br>2:25-cv-06875-JVS-KES | Date | August 18, 2025 |

| | |
|---|---|
| Title | Jagger Giles v. National Collegiate Athletic Association,<br>Kaedin Robinson v. National Collegiate Athletic Association,<br>DaJuanye Wingfield v. National Collegiate Athletic Association NCAA |

738, 744–46 (M.D.Tenn.1990), Goldstein v. NCAA, No. 3:25-cv-27, 2025 WL 662809
(M.D. Ga., Feb. 28, 2025); Osuna Sanchez v. NCAA, No. 3:25-cv-62-CEA-DCP, 2025
WL 684271 (E.D. Tenn. Mar. 3, 2025); Coley v. NCAA, No. 5:25-cv-00098-D-BM,
2025 WL 1616719 (E.D.N.C. June 6, 2025); Brzovic v. NCAA, No. 2:25-cv-02885-
DCN, 2025 WL 1370758 (D.S.C. May 11, 2025). But cf. Pavia, 760 F. Supp. 3d; Elad v.
NCAA, 2025 WL 1202014 (D.N.J. Apr. 25, 2025); Zeigler v. NCAA, 2025 WL
1671952, at *3 (E.D. Tenn. June 12, 2025).

These cases are in line with the Ninth Circuit precedent. In O'Bannon v. Nat'l
Collegiate Athletic Ass'n, the Ninth Circuit held that the NAugust 18, 2025CAA rules
prohibiting NILs regulate commercial activity and thereby fall under the purview of the
Sherman Act. 802 F.3d 1049, 1064 (9th Cir. 2015). The court found that Section 1 of
the Sherman Act "surely encompasses the transaction in which an athletic recruit
exchanges his labor and NIL rights for a scholarship at a Division I school because it is
undeniable that both parties to that exchange anticipate economic gain from it." Id. at
1065. In doing so, the court differentiated between compensation and eligibility rules.
Id. at 1065–66. While "the mere fact that a rule can be characterized as an 'eligibility
rule,' however, does not mean the rule is not a restraint of trade[,]" only compensation
rules regulate commercial activity and are subject to the antitrust laws. Id. True
eligibility rules, contrarily, do not regulate commercial activity. Id.

Decisions in other circuits are coterminous with O'Bannon.[5] For example, the
Third Circuit in Smith v. Nat'l Collegiate Athletic Ass'n held that the NCAA's bylaw
that prohibits intercollegiate athletics from participating at a postgraduate institution
other than the institution from which the student earned her undergraduate degree "is not
the type of action to which the Sherman Act was meant to be applied." 139 F.3d 180,
184 (3d Cir. 1998), vacated on other grounds by Nat'l Collegiate Athletic Ass'n v.

---

[5]Although Plaintiffs claim that Smith did not convince the Ninth Circuit (Giles Mot. at 10), this
was because of the distinguishing facts of the case where Smith dealt with a true eligibility rule. 802
F.3d at 1066. However, the O'Bannon court applied the same underlying logic— that only commercial
rules are subject to the antitrust laws.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:25-cv-01488-JVS-KES<br>2:25-cv-06454-JVS-KES<br>2:25-cv-06875-JVS-KES | Date | August 18, 2025 |

| Title | Jagger Giles v. National Collegiate Athletic Association,<br>Kaedin Robinson v. National Collegiate Athletic Association,<br>DaJuanye Wingfield v. National Collegiate Athletic Association NCAA |

Smith, 525 U.S. 459 (1999) (quotations and citations omitted).  The Third Circuit
similarly distinguished between rules that regulate commercial activity and eligibility.
Eligibility rules do not "intend[] to provide the NCAA with a commercial advantage, []
but primarily seek to ensure fair competition in intercollegiate athletics." Id. at 186; see
also Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 433 (6th Cir. 2008) ("As
we held in Worldwide Basketball, the appropriate inquiry is 'whether the rule itself is
commercial, not whether the entity promulgating the rule is commercial.'")  O'Bannon
agreed with the logic in Smith, stating that "Postbaccalaureate Bylaw challenged in
Smith was a true 'eligibility' rule, *akin to* the rules limiting the number of years that
student-athletes may play collegiate sports or requiring student-athletes to complete a
certain number of credit hours each semester."  802 F.3d at 1066 (emphasis added).

Here, like many other district court cases, Plaintiffs argue that the Five-Year Rule
violates the Sherman Act.  (Giles Mot. at 8; Robinson Response at 1–4.)  Plaintiffs
contend that in reality, NIL contracts are only available to student athletes competing at
NCAA DI institutions, not junior colleges.  (Robinson Response, at 3–4.)  Thus, the
eligibility rule that counts the years played at a junior college limits JUCO students'
ability to negotiate a NIL agreement.  (Id.)  For instance, they argue that a a student
deciding between a NCAA and a JUCO institution may choose to attend the NCAA
school at a lower compensation in order to seek potential NIL compensation.  (Id. at 4.)
They argue that, in turn, NCAA member schools profit by giving lower compensation to
student-athletes.  (Id.)

However, bound by Ninth Circuit precedent, this Court finds that the Five-Year
Rule is not subject to antitrust scrutiny because it is likely a "true" eligibility rule.  802
F.3d at 1066.  While Plaintiffs contend that the Five-Year Rule implicates compensation
issues, the rule itself is simple: it caps the number of years that student athletes can
participate in college sports.  This is distinguishable from rules limiting NILs or
education-related compensation, where an economic exchange is at the heart of the rule.
See Alston 594 U.S. at 106–107; O'Bannon, 802 F.3d at 1066.  The Five-Year Rule does
not regulate any sort of labor for in-kind compensation to fall within the ambit of the
Sherman Act.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:25-cv-01488-JVS-KES | Date | August 18, 2025 |
|---|---|---|---|
| | 2:25-cv-06454-JVS-KES | | |
| | 2:25-cv-06875-JVS-KES | | |

| Title | Jagger Giles v. National Collegiate Athletic Association, |
|---|---|
| | Kaedin Robinson v. National Collegiate Athletic Association, |
| | DaJuanye Wingfield v. National Collegiate Athletic Association NCAA |

Parties rely heavily on <u>Pavia</u> and <u>Elad</u>, but as an initial matter, neither binds this Court.  Second, both courts held that the Five-Year Rule was commercial in nature because "[i]t necessarily follows that restrictions on who is eligible to play and therefore to negotiate NIL agreements is also commercial in nature."  <u>Pavia</u>, 760 F. Supp. at 537; see <u>Elad</u>, WL 1202014, at *7 ("Selectively limiting JUCO students from that pool necessarily has a commercial effect.")  However, Plaintiffs concede that NIL opportunities are "legally available to JUCO students" and thus, it is unclear whether they are, in fact, excluded from the pool of student able to negotiate a NIL contract. (Robinson Response at 3.)  Furthermore, there is a subtle difference between a rule that retrains NIL compensation and a rule that limits one's potential to negotiate a NIL agreement.  Putting aside the NIL agreements, the question of whether a player's time has run remains in full force.  There is no doubt that the NCAA is a commercial enterprise, and the circumstances have changed since <u>O'Bannon</u> to allow D1 players to receive NIL compensation.  <u>Alston</u>, 594 U.S. at 76–77.  Nevertheless, the Court must distinguish between a commercial institution and the commercial rules it promulgates. The eligibility question is not tethered to the question of compensation or commercial transaction.  Accordingly, the Court joins its sister courts in finding that the Five-Year Rule is not commercial.

The Court also notes that Plaintiffs additionally seek a preliminary injunction of the No Agent and No Draft Rule.  (Robinson TRO at 6; Robinson Response at 11.) However, they provide no argument or analysis that these rules constitute unreasonable restraints on trade or that they are also commercial in nature.

> 2.     Section 1 Rule of Reason Analysis

Even if the Court were to find that the Fiver-Year Rule regulates commercial activity, Plaintiffs have not shown a likelihood of success on the merits.

Courts apply the rule of reason rather than a per se rule to determine whether the NCAA rules violate the Sherman Act.  See <u>Alston</u>, 594 U.S. at 88; <u>O'Bannon</u>, 802 F.3d

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:25-cv-01488-JVS-KES<br>2:25-cv-06454-JVS-KES<br>2:25-cv-06875-JVS-KES | Date | August 18, 2025 |

| | |
|---|---|
| Title | <u>Jagger Giles v. National Collegiate Athletic Association</u>,<br><u>Kaedin Robinson v. National Collegiate Athletic Association</u>,<br><u>DaJuanye Wingfield v. National Collegiate Athletic Association NCAA</u> |

at 1069; <u>Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Oklahoma</u>, 468 U.S. 85, 103, 104 S. Ct. 2948, 2961, 82 L. Ed. 2d 70 (1984). The rule of reason sets out a three-step burden-shifting framework: (1) first, the "plaintiff has the initial burden to prove that the challenged restraint has a substantial anticompetitive effect[;]" (2) the burden then "shifts to the defendant to show a procompetitive rationale for the restraint[;]" (3) if the defendant can make that showing, "the burden shifts back to the plaintiff to demonstrate that the procompetitive efficiencies could be reasonably achieved through less anticompetitive means." <u>Ohio v. Am. Express Co.</u>, 585 U.S. 529, 541–42 (2018).

### a.     Market Definition

Plaintiffs failed to make a prima facie showing that the Five-Year Rule has an anticompetitive effect in the relevant market. A plaintiff can demonstrate anticompetitive effect either directly, by proof of actual harm on competition, or indirectly, through reduced output, increased prices, or decreased quality. <u>Id.</u> at 542. However, even before proving an anticompetitive effect, "a threshold step" is defining the market, "the area of effective competition." <u>Fed. Trade Comm'n v. Qualcomm Inc.</u>, 969 F.3d 974, 992 (9th Cir. 2020) (quoting <u>Am. Express</u>, 585 U.S. at 543.) "The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." <u>Brown Shoe Co. v. United States</u>, 370 U.S. 294, 325 (1962).

Here, Giles defines the market as the labor market for college football in the U.S.[6] (Giles Mot. at 15.) First, the Court agrees with the NCAA that all Plaintiffs' allegations concern only NCAA DI and the complaints cannot sustain a broader market definition that includes DI, DII, DIII, National Association of Intercollegiate Athletes, and JUCO. (Opp'n at 13.) In fact, Plaintiffs acknowledge that "there are no alternatives to the NIL

---

[6]Although Giles states that the market includes the entire market for college football, during oral argument, he argued that the relevant market only concerned DI football. (Aug. 18, 2025 Hr'g.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:25-cv-01488-JVS-KES<br>2:25-cv-06454-JVS-KES<br>2:25-cv-06875-JVS-KES | Date | August 18, 2025 |

Title    Jagger Giles v. National Collegiate Athletic Association,
         Kaedin Robinson v. National Collegiate Athletic Association,
         DaJuanye Wingfield v. National Collegiate Athletic Association NCAA

Compensation opportunities or other benefits college football players receive from participating in NCA DI football." (Robinson Response at 5.)

Moreover, the rule of reason analysis "requires courts to conduct a fact-specific assessment of market power and market structure to assess the restraint's actual effect on competition." Am. Express, 585 U.S. at 541. Plaintiffs fail to provide any form of market definition analysis regarding the interchangeability or cross-price elasticity in their briefs. Instead, they discuss the significant benefits and opportunities available to NCAA DI athletes. (See, e.g., Giles Mot. at 14.) This is not how markets are defined. See Am. Express, 585 U.S. at 541; Brown Shoe, 370 U.S. at 325. These general, broad allegations leave a void only to be filled by the Court assumptions about the relevant market and market power. (See Giles Mot. at 13–15.) There is no information about how many players attended JUCO before transferring to a DI institution and are affected by the Five-Year Rule or how many players receive NIL contracts. Without understanding the outer boundaries of the relevant labor market, the Court is hesitant to enter a mandatory injunction. See Stanley, 13 F.3d at 1320.

The NCAA also argues that the Plaintiffs' market definition is too narrow and that Plaintiffs fail to consider substitutes such as the NFL. The NCAA contends that empirical evidence shows that the NIL compensation for DI players decreased entry into the NFL draft, suggesting that the NFL could be a substitute buyer. (Opp'n at 13–14.) Moreover, NIL compensation is not limited to football players, so players in other sports could be an "alternative source of supply." (Id. at 14) (quotations omitted). It is the Plaintiffs' burden to establish and prove the relevant market. Plaintiffs simply have not met this burden.

Finally, as the NCAA persuasively argues, Plaintiffs rely on the market definitions from other cases to lay their foundation. (Giles Mot. at 15; Robinson TRO at 12; Wingfield TRO at 10.) The Court cannot rely upon the factual findings of another court, even where the facts are similarly situated. While a court "may take [judicial] notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue," Bias v. Moynihan, 508 F.3d

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:25-cv-01488-JVS-KES<br>2:25-cv-06454-JVS-KES<br>2:25-cv-06875-JVS-KES | Date | August 18, 2025 |

| | |
|---|---|
| Title | Jagger Giles v. National Collegiate Athletic Association,<br>Kaedin Robinson v. National Collegiate Athletic Association,<br>DaJuanye Wingfield v. National Collegiate Athletic Association NCAA |

1212, 1225 (9th Cir. 2007), judicially noticed facts cannot be subject to reasonable dispute as it is the case here, Fed. R. Evid. 201(b).  Furthermore, if the market realities have changed since O'Bannon, as Plaintiffs argue, this would require substantial more analysis as to the current market definition.  Without a proper market definition, the Court cannot assess the likelihood of success on the merits of the anticompetitive effect.

     **b.**    **Anticompetitive Effect**

Second, even if the market was properly defined, the Court finds no antitrust injury.  Plaintiffs allege that the Five-Year Rule has an anticompetitive effect on junior colleges and JUCO football players.  (Robinson Response at 5–6.)

To the argument that the rule dissuades athletes from attending junior colleges, the NCAA responds that the harm is unique to those transferring from junior colleges and does not affect market-wide competition.  (Opp'n at 16.)  As the antitrust laws were enacted for "the protection of competition, not competitors," Brown Shoe, 370 U.S. at 320, the NCAA alleges that injury specific to these three individuals is not sufficient.  (Opp'n at 16.)  Plaintiffs have not shown that the rule results in any "reduced output, increased prices, or decreased quality" of labor in the relevant market, and the Court finds allegations as to market-wide impact conclusory.  Am. Express Co., 585 U.S. at 542.  On the other hand, though limited, the NCAA cites to empirical evidence in support of its argument.  (Opp'n at 19.)  There are only a handful of cases have followed Pavia.  Even with the inclusion of these Plaintiffs, the Court finds less than a dozen players affected by the Five-Year Rule at this time.  This may be a harm to competitors, but surely not one to competition.  See Brown Shoe, 370 U.S. at 320.  The Court comes to the same conclusion for the Plaintiffs' claim that the rule disadvantages junior colleges and causes downstream harm to consumers of collegiate athletics.  (Robinson Response at 6; Giles Mot. at 17–18.)  Accordingly, Plaintiffs are unlikely to meet their initial burden and the Court declines to proceed to the second step of the rule of reason analysis.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | |
|---|---|---|
| Case No. | 8:25-cv-01488-JVS-KES<br>2:25-cv-06454-JVS-KES<br>2:25-cv-06875-JVS-KES | Date   August 18, 2025 |

| | |
|---|---|
| Title | Jagger Giles v. National Collegiate Athletic Association,<br>Kaedin Robinson v. National Collegiate Athletic Association,<br>DaJuanye Wingfield v. National Collegiate Athletic Association NCAA |

In sum, federal antitrust law does provide a remedy to Plaintiff's inability to play in the 2025-2026 season.

### B.    Irreparable Harm

The Court next examines whether Plaintiffs will suffer irreparable harm if the preliminary injunction does not issue.  Plaintiffs argue that their missed opportunities to practice, compete, and gain national attention amount to an immediate and irreparable harm.  (Robinson Response at 8–9.)  The NCAA contends that the harm is too speculative to be considered irreparable.  (Opp'n at 24.)

While it is true that Plaintiffs "must establish that irreparable harm is likely, not just possible" to obtain a preliminary injunction, the Court finds that some of the alleged harms to Plaintiffs are nearly certain.  All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011).  For instance, without a preliminary injunction, Plaintiffs would be deprived of the opportunity to participate in critical practice sessions or games that help develop one's skills and build teamwork.  (Giles Reply at 8; Robinson TRO at 16–17.)  There is no remedy at law for such injury and lost time cannot be compensated.

However, the Court is wary to find irreparable harm where Plaintiffs delayed in seeking a preliminary injunction.  The NCAA argues that the Plaintiffs knew that they would only have two more years to compete when they began in DI because each student must sign a statement informing them of the eligibility rules under the bylaws.[7]  (Opp'n at 26.)  Thus, it was likely that Giles knew since 2023[8], Robinson since 2021, and

---

[7]The Court notes that these documents have not been produced by the NCAA.

[8]Giles claims that he only found out around June 6, 2025 when USD would not be requesting a waiver on his behalf.  (Giles Mot. at 19.)  However, having knowledge of the Five-Year Rule and that it would not be waived for him are two different set of facts.  The Court notes that if he had learned and relied on the Pavia decision, which was issued in December 2024, he surely knew of the Five-Year Rule at that time.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:25-cv-01488-JVS-KES<br>2:25-cv-06454-JVS-KES<br>2:25-cv-06875-JVS-KES | Date | August 18, 2025 |
|---|---|---|---|

| Title | Jagger Giles v. National Collegiate Athletic Association,<br>Kaedin Robinson v. National Collegiate Athletic Association,<br>DaJuanye Wingfield v. National Collegiate Athletic Association NCAA |
|---|---|

Wingfield since 2022, of the Five-Year Rule. Moreover, the NCAA provides evidence that Robinson delayed in filing suit in this Court because he was forum-shopping earlier this year. (Opp'n at 28–29.) As for Wingfield, the NCAA denied his request for a waiver on March 26, 2025. (Wingfield Compl. ¶ 39.) Since Wingfield has not been eligible for five months, the same ineligibility cannot now be the grounds for irreparable harm in a preliminary injunction. Although Plaintiffs contend that they did not delay because they acted in response to the Pavia decision, the case is dated December 18, 2024. It is questionable if there is a substantial threat of irreparable injury where there are indications of delay in moving the Court.

Furthermore, the Court also notes that even if it were to find no delay and grant the preliminary injunction, Robinson and Wingfield may still be ineligible to play under the No Agent, No Draft, and the Progress-Toward-Degree Bylaws. (See supra, Section I.) Since the preliminary injunction would yield the same result—especially as to Robinson who violated the No Agent, No Draft Bylaws—the Court also finds no irreparable injury if a preliminary injunction were not to issue.

### C. Balance of Equities

Next, Plaintiffs also contend that the balance of equities favors injunctive relief because these athletes will "suffer substantial, immediate, and irreparable harm" if prevented from playing next season while the NCAA would suffer no substantial harm. (Robinson Response at 9–10.) On the other hand, the NCAA contends that the eligibility rules affect over 180,000 DI student-athletes across multiple sports. (Opp'n at 30.) Given that there is a fixed number of slots for DI athletes, the injunction would impact athletes that could have taken Plaintiffs' slots, current DI players who have committed to a NCAA institution, and high school seniors going through college recruitment. (Id.) Consequently, the Court finds that the balance of equities does not favor Plaintiffs, and the factor is neutral at best.

### D. Public Interest

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:25-cv-01488-JVS-KES<br>2:25-cv-06454-JVS-KES<br>2:25-cv-06875-JVS-KES | Date | August 18, 2025 |

| | |
|---|---|
| Title | Jagger Giles v. National Collegiate Athletic Association,<br>Kaedin Robinson v. National Collegiate Athletic Association,<br>DaJuanye Wingfield v. National Collegiate Athletic Association NCAA |

Finally, Plaintiffs make a blanket statement that an injunction would serve the public interest by "promoting free and fair competition in labor markets." (Giles Mot. at 21–22.) The NCAA does not disagree with the goal of antitrust law. However, as the Court previously found, Plaintiffs have not shown that the Five-Year Rule has an anticompetitive effect to begin with. (See supra Section III.A.) To that end, the Court does not find that a preliminary injunction would better serve the public interest.

In conclusion, the Winter factors weigh against a preliminary injunction.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** the preliminary injunction. (Giles, Dkt. No. 16; Robinson, Dkt. No. 19; Wingfield, Dkt. No. 14.)

**IT IS SO ORDERED.**